ASOCIACIÓN DE PESCADORES DE PUNTA FIGUERAS, INC. ET AL., demandantes y peticionarios, *v.* MARINA DE PUERTO DEL REY, INC., demandada y recurrida.

*Número:* CC-2000-954 *Resuelto:* 18 de diciembre de 2001

*Gustavo A. Quiñones Pinto*, abogado de la parte peticionaria; *José Luis Novas Debién*, abogado de la recurrida.

EL JUEZ ASOCIADO SEÑOR CORRADA DEL RÍO emitió la opinión del Tribunal.

La Marina de Puerto del Rey, Inc. (en adelante Puerto del Rey)[1] sometió ante la consideración de la Junta de Planificación (en adelante Junta) la Consulta Núm. 82–24–0769–JDP, respecto a la ubicación de una marina en la Bahía Demajagua, ubicada en el Barrio Demajagua en Fajardo. Mediante Resolución de 19 de mayo de 1983, la Junta aprobó la consulta presentada por Puerto del Rey.[2]

---

[1] La Marina Puerto del Rey, Inc. (en edelante Puerto del Rey) es una corporación organizada bajo las leyes del Estado Libre Asociado de Puerto Rico (en adelante ELA) dedicada al negocio de proveer espacio de muelles y almacenamiento de embarcaciones de placer.

[2] Anteriormente la consulta fue denegada por la Junta de Planificación (en adelante la Junta) mediante la resolución emitida el 3 de febrero de 1983. El 23 de marzo de 1983, Puerto del Rey solicitó a la Junta que reconsiderara; mediante resolución emitida el 19 de mayo la Junta aprobó la consulta. Véase Sentencia del Tribunal de Primera Instancia, Apéndice, pág. 56.

La consulta fue condicionada, entre otras cosas, a que se construyera una vía con una sección de once (11) metros, desde la Carretera Estatal Número 3 hasta la playa, y una paralela a la zona marítimo-terrestre diseñando rampas de acceso al mar en coordinación con el Departamento de Recursos Naturales y la Corporación para el Desarrollo y Administración de los Recursos Marítimos, Lacustres y Fluviales (en adelante CODREMAR).(³) Además, Puerto del Rey debía proveer un estacionamiento público de veinte (20) espacios, el cual se destinaría a uso público al igual que las calles, ello mediante el otorgamiento de una escritura pública.(⁴)

La Junta requirió, además, que Puerto del Rey cediera al Estado mediante escritura pública, una franja de veinte (20.0) metros paralela a la zona marítimo-terrestre. Las escrituras públicas respecto a los terrenos cedidos a las vías para construir para dar accesos a la playa y a las áreas de estacionamiento público, deberían otorgarse *antes* de la concesión de permisos por la Administración de Reglamentos y Permisos (en adelante A.R.Pe.).(⁵)

Dispuso la Junta, además, que Puerto del Rey debía dedicar a uso público cincuenta (50) espacios de atracadores de botes (*boat-slips*) para uso y disfrute de los pescadores del sector, cuya ubicación debía ser coordinada con CODREMAR.

(³) Véase Resolución de 19 de mayo de 1983 emitida por la Junta, Apéndice, pág. 264. A tenor del Art. 8 de la Ley Núm. 61 de 23 de agosto de 1990 (5 L.P.R.A. sec. 1527), conocida como la Ley para el Fomento y Desarrollo de la Industria Pesquera y la Agricultura, se transfirieron al Departamento de Agricultura, Programa de Fomento, Desarrollo y Administración Pesquera, todas las funciones de Desarrollo y Administración de los Recursos Marítimos, Lacustres y Fluviales (en adelante CODREMAR).

(⁴) Véase Resolución de 19 de mayo de 1983 emitida por la Junta, Apéndice, pág. 264.

(⁵) "Los terrenos a ser cedidos al Estado tales como la franja de 20.0 metros paralela a la zona marítimo-terrestre, calles de acceso a la playa y áreas de estacionamiento público se harán [sic] mediante la escritura pública correspondiente previo al otorgamiento del permiso de uso para la marina y sus facilidades." Apéndice, pág. 265.

Así las cosas, el 1ro de octubre de 1986, Puerto del Rey solicitó autorización a A.R.Pe. para el desarrollo preliminar de la marina en la Bahía Demajagua. A.R.Pe., mediante Resolución de 27 de marzo de 1987, concedió el permiso solicitado incorporando sustancialmente las condiciones impuestas por la Junta.(6) En dicha resolución, A.R.Pe. requirió, entre otras cosas: (1) que uno de los siete (7) muelles secundarios que se construirían en la marina fuera destinado a uso público para uso y disfrute de los pescadores del sector, el cual debería incluir un total de cincuenta (50) espacios para atracar botes (*boat-slips*); (2) que se construyera una vía pública con una sección de once (11) metros, desde la Carretera Estatal Número 3 hasta la playa, en coordinación con el Departamento de Recursos Naturales y CODREMAR; (3) que se dedique a uso público una franja de terreno con un ancho mínimo de veinte (20) metros, paralela y medida desde la zona marítimo-terrestre.

Conforme la resolución de A.R.Pe., *la ubicación y el uso* de los cincuenta (50) espacios de atracadores de botes (*boat-slips*) deberían ser coordinados con CODREMAR. Prohibió, además, el control de acceso u obstáculos que impidiesen el libre uso y disfrute de los pescadores a dicho muelle, por lo que se debía garantizar a perpetuidad el libre acceso de los pescadores al muelle desde la Carretera Número 3.

Posteriormente, Puerto del Rey presentó ante la consideración de A.R.Pe. un plano de desarrollo preliminar alterno. Dicho plano consistía en el rediseño parcial de las tres (3) etapas de desarrollo que comprende el proyecto objeto de este pleito. Mediante Resolución de 30 de mayo

---

(6) Véase Resolución de 27 de marzo de 1987 intitulada *Autorizando desarrollo preliminar para proyecto de urbanización residencial turístico-comercial, así como marina en la Bahía Demajagua, en el Barrio Demajagua del Municipio de Fajardo,* Apéndice, págs. 271–279.

de 1990, A.R.Pe. aprobó el referido plano, resolución que no modificó los usos y las condiciones antes indicados.([7])

El 15 de mayo de 1996 la Asociación de Pescadores de Punta Figueras, Inc. (en adelante la Asociación)([8]) presentó ante el Tribunal de Primera Instancia (en adelante TPI) una acción sobre *Injunction y Daños y Perjuicios*. En síntesis, la Asociación alegó el incumplimiento de Puerto del Rey con las condiciones impuestas por A.R.Pe., "relacionadas con el uso y disfrute de los pescadores del sector, al área de muelle y estacionamiento a ser dedicado en el proyecto a uso público para uso y disfrute de … éstos". Apéndice, pág. 53. Arguyó, además, que Puerto del Rey bloqueó el acceso a los pescadores y a los ciudadanos a la Playa Punta Figueras.

Mediante demanda enmendada, se incluyó como demandados a A.R.Pe., al Departamento de Recursos Naturales, al Estado Libre Asociado de Puerto Rico (en adelante E.L.A.) y al Municipio de Fajardo (en adelante el Municipio). Respecto a éstos, la Asociación alegó que le eran responsables por los daños causados por su inacción de velar por el interés público y hacer cumplir las órdenes impuestas a Puerto del Rey.

Luego de varios incidentes procesales, se depuso al Ingeniero Jorge Colón Miranda, Director de la Sección Técnica de A.R.Pe.([9]) Expresó el ingeniero Colón Miranda que A.R.Pe. impuso a Puerto del Rey dedicar a uso público para el uso y disfrute de los pescadores del sector uno de los muelles secundarios, el cual debería incluir un total de cin-

---

([7]) Véase Resolución de 30 de mayo de 1990, titulada *Autorizando plano de desarrollo Preliminar Alterno para proyecto de urbanización residencial, turístico-comercial, así como marina en la Bahía Demajagua, en el Barrio Demajagua del Municipio de Fajardo*, Apéndice, págs. 280–289.

([8]) La Asociación de Pescadores de Punta Figueras, Inc. (en adelante la Asociación) es una corporación sin fines de lucro organizada bajo las leyes del ELA, dedicada a promover la organización y bienestar de los pescadores de la Playa Punta Figueras de Fajardo y Ceiba.

([9]) Véase *Deposición tomada al ingeniero Jorge Colón Miranda, Administración de Reglamentos y Permisos*, Apéndice, págs. 184–220.

cuenta (50) espacios para atracar botes (*boat-slips*). Señaló que, conforme al plano sometido a A.R.Pᴇ., el acceso a dichas facilidades es a través de una franja de terreno de ocho (8) metros que discurre desde la Carretera Estatal Número 3 hasta las facilidades destinadas a los pescadores, el varadero y la Policía.

En la Conferencia con Antelación al Juicio, celebrada el 23 de abril de 1999, el TPI ordenó que las partes se reunieran el 7 de mayo de 1999, para evaluar un proyecto de escritura pública conforme a las condiciones y recomendaciones dispuestas por las agencias administrativas.

Puerto del Rey otorgó el 6 de mayo de 1999 ante el notario público Jorge S. Carlo Marrero, la escritura pública número siete (7) titulada *Dedicación a uso público del muelle número sesenta y cinco (65) y facilidades accesorias en la Marina Puerto del Rey de Fajardo, Puerto Rico*. Mediante la escritura, Puerto del Rey dedica a uso público uno de los muelles secundarios para uso y disfrute de los pescadores, el cual provee cincuenta (50) espacios para atracar botes. Además, dedica a uso público un área para veinte (20) espacios de estacionamiento de automóviles de pescadores, ubicado en el sector sureste de la marina. Se unió y se hizo formar parte de la escritura pública copia de los planos del proyecto aprobados por A.R.Pᴇ., en los cuales se provee un acceso de ocho (8) metros de ancho que conecta la Carretera Estatal Número 3 con el estacionamiento dedicado a uso público para el uso y disfrute de los pescadores.

No obstante, la utilización de las facilidades fue condicionada al uso de pescadores *bona fide* que mantienen licencias de pesca comercial vigentes con el Departamento de Recursos Naturales y Ambientales; que las embarcaciones de los pescadores estén debidamente inscritas para la pesca comercial con dicho departamento, y que sean utilizadas exclusivamente para la pesca comercial.

Puerto del Rey sometió ante A.R.PE. y al Departamento de Agricultura, sucesor de CODREMAR, la escritura pública otorgada el 6 de mayo de 1999, para su aprobación, por entender que compete a éstos su aprobación.

Dada la inconformidad de la Asociación con las condiciones dispuestas en la escritura pública otorgada por Puerto del Rey, el TPI celebró una vista el 27 de octubre de 1999, en la cual las partes acordaron someter ante la consideración del tribunal sus respectivas posiciones por escrito, para así determinar si procedía dictar sentencia sumaria. La controversia quedó delimitada por las partes de la siguiente manera:

> 1) Si Puerto del Rey conforme a las resoluciones y permisos emitidos por las agencias administrativas involucradas tenía la obligación de suscribir una escritura pública para dedicar a uso público, sin ningún tipo de restricción, el muelle identificado como "Muelle para uso de pescadores", el estacionamiento identificado como "Estacionamiento para pescadores" así como el acceso que conecta la Carretera Estatal Núm. 3 con dichas facilidades, 2) o si en la escritura a suscribir Puerto del Rey podía establecer algún tipo de restricción en el acceso a dichas facilidades. Apéndice, pág. 54.

La Asociación presentó Solicitud de Sentencia Sumaria, en la cual cuestionó el instrumento otorgado. Arguyó, en síntesis, que las condiciones establecidas en el instrumento público contravienen las resoluciones de A.R.PE.([10])

Por su parte, Puerto del Rey presentó Oposición a Moción de Sentencia Sumaria. En resumen, Puerto del Rey alegó la existencia de controversias sobre hechos materiales. Solicitó al TPI que declarara no ha lugar la moción de sentencia sumaria y la imposición de honorarios de abogados a su favor.

---

([10]) El Municipio compareció ante el Tribunal de Primera Instancia (en adelante TPI) mediante escrito de 13 de mayo de 1999, titulado *Moción informativa y aclarando situación procesal*, Apéndice, págs. 356–358. Expuso que, entendía que la escritura pública no cumplía con lo requerido por Administración de Reglamentos y Permisos (en edelante A.R.PE.) y que, por el contrario, establecía una serie de condiciones y controles que expresamente prohíbe el permiso de construcción otorgado.

Vistas la alegaciones de las partes, el 7 de abril de 2000, el TPI dictó sentencia para ordenar a Puerto del Rey a otorgar la escritura de dedicación a uso público del Muelle Sesenta y Cinco (65) y Facilidades Accesorias en la Marina Puerto del Rey de Fajardo, sin incluir, "bajo ningún concepto, condiciones o cláusulas que [de] alguna manera creen un control de acceso u obstáculo que impida el uso y disfrute del público y de los pescadores del sector al área de muelle público". Apéndice, pág. 80.

Concluyó, además, que mediante su escrito de oposición a la solicitud de sentencia sumaria, Puerto del Rey pretendía "atacar colateralmente o modificar los requisitos claramente impuestos por las agencias administrativas como condición a la autorización del proyecto que originalmente aceptaron y aprovecharon para su propio beneficio". Apéndice, pág. 78. Entendió el TPI que Puerto del Rey estaba impedida de impugnar en dicha forma las resoluciones de la Junta y A.R.Pe., dado que no utilizó los mecanismos provistos por dichas agencias para cuestionar las condiciones impuestas.

Inconforme con las determinaciones del TPI, el 15 de mayo de 2000, Puerto del Rey recurre ante el Tribunal de Circuito de Apelaciones (en adelante TCA) alegando que el TPI erró al dictar sentencia sumaria en su contra. El TCA concluyó que, "[a]l momento de presentarse la demanda ante el tribunal de instancia, ni ARPE ni el Departamento de Agricultura habían emitido determinación alguna sobre la escritura mediante la cual Marina Puerto del Rey, pretendía cumplir con las condiciones impuestas que le había impuesto ARPE". Apéndice, pág. 17. Coligió, además, que la solicitud del remedio interdictal ante el TPI fue prematuro, "toda vez que no se habían agotado todos los remedios administrativos". Por dichas razones el TCA revocó la sentencia sumaria emitida por el TPI y dictaminó que no procedía conceder el remedio solicitado por la Asociación por falta de jurisdicción.

De la sentencia emitida el 10 de noviembre de 2000 por el TCA, recurre ante nos la Asociación, vía *certiorari*, alegando la comisión de los siguientes errores:

> A. Erró el Tribunal de Circuito de Apelaciones al resolver que el Tribunal de Primera Instancia carecía de jurisdicción al dictar la sentencia sumaria objeto del presente recurso, por no haber agotado los remedios administrativos ante las agencias administrativas concernidas.
> B. Erró el Tribunal de Circuito de Apelaciones al no confirmar la sentencia sumaria dictada y ampliarla a los efectos de que las Resoluciones y condiciones impuestas por ARPE a Puerto del Rey responden a la política de interés público de que los ciudadanos de Puerto Rico tengan libre acceso a sus playas. Petición de *certiorari*, págs. 6–7.

Mediante Resolución de 22 de diciembre de 2000, expedimos el auto de *certiorari*. Contando con las comparecencias de las partes, resolvemos.

I

La doctrina de agotamiento de remedios administrativos es una norma de abstención judicial. *Igartúa de la Rosa v. A.D.T.*, 147 D.P.R. 318 (1998). Postula que toda parte que esté dentro de un procedimiento ante una agencia administrativa no podrá recurrir ante el foro judicial hasta que haya agotado todos los remedios ante la agencia. "[C]onforme esta doctrina, el foro judicial debe abstenerse hasta que concluyan los trámites administrativos." *Acevedo v. Mun. de Aguadilla*, 153 D.P.R. 788, 802 (2001). Véanse: *Guadalupe v. Saldaña, Pres. U.P.R.*, 133 D.P.R. 42, 49 (1993); *Colón v. Méndez, Depto. Recursos Naturales*, 130 D.P.R. 433, 443 (1992); *Mercado Vega v. U.P.R.*, 128 D.P.R. 273 (1991); *Delgado Rodríguez v. Nazario de Ferrer*, 121 D.P.R. 347 (1988). Precisa que así sea, para que la agencia tenga ante sí todos los elementos del caso, y las determinaciones de ésta reflejen su decisión final para poder ser considerada por los tribunales. *Acevedo v. Mun. de Agua-*

*dilla*, supra; *E.L.A. v. 12,974.78 Metros Cuadrados*, 90 D.P.R. 506 (1964).

■ Recientemente, en *Mun. de Caguas v. AT & T*, 154 D.P.R. 401, 407 (2001), reiteramos los propósitos de dicha doctrina:

> La norma de agotamiento, pues, tiene el propósito de dilucidar cuándo es el momento apropiado para que los tribunales intervengan en una controversia que había sido previamente sometida a una intervención administrativa. *Vélez Ramírez v. Romero Barceló*, 112 D.P.R. 716, 722 (1982); *E.L.A. v. 12,974.78 Metros Cuadrados*[, supra, pág. 513]. Es decir, su objetivo es determinar la etapa en la cual el litigante en el foro administrativo puede recurrir a los tribunales. *Delgado Rodríguez v. Nazario de Ferrer*, [supra]....

■ El agotar todos los remedios provistos por la agencia, constituye un requisito jurisdiccional. Sin embargo, como hemos expresado en el pasado, dicho trámite administrativo puede ser preterido bajo limitadas excepciones. Estas son: (1) que el remedio provisto por la agencia sea inadecuado; (2) que se pueda producir un daño irreparable al promovente y en el balance de los intereses involucrados no justifique agotar los remedios administrativos; (3) que en la acción judicial se alegue la violación sustancial de derechos constitucionales, o (4) cuando el caso presente claramente que la agencia administrativa carece de jurisdicción, entre otras. *Igartúa de la Rosa v. A.D.T.*, supra. Véanse, además: *Guadalupe v. Saldaña, Pres. U.P.R.*, supra; *Colón v. Méndez, Depto. Recursos Naturales*, supra; *Delgado Rodríguez v. Nazario de Ferrer*, supra; *First Fed. v. Asoc. de Condómines*, 114 D.P.R. 426 (1983). Añade la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (en adelante LPAU), 3 L.P.R.A. sec. 2101 *et seq.*, que no será necesario agotar todos los remedios provistos por la agencia, "cuando sea un asunto estrictamente de derecho y es innecesaria la pericia administrativa". 3 L.P.R.A. sec. 2173.

■ Al aplicar la doctrina de agotamiento de remedios administrativos, resulta evidentemente necesario que la parte contra la cual se invoca haya participado en los procedimientos ante la agencia. Al respecto, en *Mun. de Caguas v. AT & T,* supra, págs. 408–409, expresamos lo siguiente:

> Como puede deducirse de todo lo anterior, pues, el agotamiento de remedios presupone la existencia de un procedimiento administrativo que comenzó pero que no finalizó porque la parte concernida recurrió al foro judicial antes de que se completase el procedimiento administrativo referido. Por ello, para que pueda aplicarse la doctrina de agotar remedios y proceda resolverse que la parte concernida no puede acudir todavía al foro judicial, es menester que exista aún alguna fase del procedimiento administrativo que la parte concernida deba agotar. *Sobre todo, es evidentemente necesario que la parte peticionaria ante el foro judicial sea la misma parte que participó en el procedimiento administrativo pero que no agotó la fase de éste que estaba aún pendiente.* (Énfasis en el original.)

## II

Veamos si a la luz de la normativa discutida procede o no requerir a la Asociación agotar remedios administrativos.

Las reclamaciones de la Asociación se basan en el incumplimiento de Puerto del Rey con las condiciones impuestas por la Junta y A.R.Pe., y la inercia de dichas agencias para hacer cumplir sus resoluciones. Surge de los autos que Puerto del Rey debía otorgar las escrituras públicas antes de la concesión de permisos por A.R.Pe., y no después, como eventualmente hizo.

■ Es obligación de las agencias concernidas velar por que se cumplan las condiciones por ellas impuestas al conceder permisos. En vista de la obligación de las agencias para hacer cumplir sus requerimientos, y la concurrente inacción de éstas, resulta impráctico e injusto que la

Asociación recurriera ante las agencias y agotara los me-
canismos y remedios ante éstas propiamente.

Incidió el TCA al concluir que la Asociación no había
agotado los remedios administrativos, bajo el argumento
de que "[a]l momento de presentarse la demanda ante el
[TPI], ni ARPE ni el Departamento de Agricultura habían
emitido determinación alguna sobre la escritura mediante
la cual Marina Puerto del Rey, pretendía cumplir con las
condiciones que le había impuesto ARPE." Apéndice, pág.
17. Al presentarse la demanda era imposible que A.R.Pe. y
el Departamento de Agricultura emitieran determinación
alguna respecto a la escritura pública, ya que ésta fue otor-
gada por orden del TPI casi tres (3) años después de la
presentación de la demanda. Precisamente, la Asociación
acudió ante el TPI para, entre otras cosas, exigir que
Puerto del Rey otorgara la escritura pública destinando a
uso público las facilidades dispuestas por A.R.Pe.

 Es doctrina reiterada que la doctrina de agota
miento de remedios administrativos, aplica en aquellos ca-
sos en que el procedimiento haya comenzado ante la agen-
cia y que dicho cauce haya sido preterido para acudir ante
un tribunal de justicia sin antes haber agotado todos los
mecanismos ante la agencia. Conforme señaláramos ante-
riormente, precisa que así sea, para que la agencia tenga
ante sí todos los elementos. *Acevedo v. Mun. de Aguadilla*,
supra.

El caso de autos no trata de un asunto que requiriera a
la Asociación acudir ante las agencias administrativas
para obtener un remedio en un procedimiento en el cual no
era parte. Se trata de una acción judicial para que se ha-
gan cumplir las condiciones impuestas por las agencias, no
cuestionadas por Puerto del Rey, y que las agencias no han
sido diligentes en hacerlas cumplir. Las agencias ya habían
tenido ante sí el asunto, ya que fueron precisamente éstas
quienes concedieron los permisos y establecieron las condi-

ciones incumplidas, mediante resoluciones que advinieron finales y firmes.

La Asociación no fue parte del procedimiento administrativo en el cual se impuso a Puerto del Rey las condiciones aquí concernidas. A tenor de nuestras expresiones en *Mun. de Caguas v. AT & T*, supra, es evidentemente necesario que la parte peticionaria ante el foro judicial haya participado en los procedimientos ante el foro administrativo, mediante el cual se concedieron los permisos correspondientes.

A todas luces, la doctrina de agotamiento de remedios administrativos no es de aplicación al caso de autos. Incidió el TCA al resolver que la Asociación debió agotar los mecanismos provistos por las agencias concernidas.

## III

■ En innumerables ocasiones hemos expresado que la revisión de este Tribunal recae sobre la sentencia misma y no contra sus fundamentos. *Pueblo v. González Vega*, 147 D.P.R. 692 (1999); *Sánchez v. Eastern Air Lines, Inc.*, 114 D.P.R. 691, 695 (1983). Ya que la doctrina de agotamiento de remedios administrativos y la de jurisdicción primaria son germanas y persiguen el mismo fin, *E.L.A. v. 12,974.78 Metros Cuadrados*, supra, pág. 513,[11] precisa que determinemos si el caso de autos es gobernado por la doctrina de jurisdicción primaria.

■ A diferencia de la doctrina de agotamiento de remedios administrativos, la doctrina de jurisdicción primaria presupone no haberse iniciado proceso alguno por las partes ante la agencia administrativa, siendo ésta quien disfruta de la discreción o conocimiento especializado para entender en los asuntos planteados. Esta doctrina "tiene el propósito de determinar dónde debe instarse inicialmente

---

[11] Véanse: *Mun. de Caguas v. AT & T*, 154 D.P.R. 401 (2001); *Aguilú Delgado v. P.R. Parking System*, 122 D.P.R. 261, 266 (1988).

una reclamación, cuando tanto una agencia administrativa como el foro judicial poseen jurisdicción concurrente sobre dicha reclamación". *Mun. de Caguas v. AT & T*, supra, pág. 410; *Colón v. Méndez, Depto. Recursos Naturales*, supra; *Aguilú Delgado v. P.R. Parking System*, 122 D.P.R. 261 (1998).

■ Si las cuestiones de hecho que han de ser consideradas requieren el ejercicio de la discreción administrativa o aplicación del conocimiento especializado que ésta posee, la reclamación debe considerarse inicialmente por el foro administrativo correspondiente. *Ortiz v. Coop. Ahorro y Crédito*, 120 D.P.R. 253 (1987); *First Fed. v. Asoc. de Condómines*, supra; *Ferrer Rodríguez v. Figueroa*, 109 D.P.R. 398 (1980). "De este modo se evita la duplicidad de esfuerzos y la posibilidad de determinaciones incompatibles o contradictorias." *Igartúa de la Rosa v. A.D.T.*, supra, pág. 332. A modo de excepción, hemos reconocido que, es el *injunction* el recurso para acudir ante el foro judicial y obviar el cauce administrativo por alegadas violaciones a derechos civiles. *Acevedo v. Mun. de Aguadilla*, supra; *Gracia Ortiz v. Policía de P.R.*, 140 D.P.R. 247 (1996); *Delgado Rodríguez v. Nazario de Ferrer*, supra; *Pedraza Rivera v. Collazo Collazo*, 108 D.P.R. 272 (1979); *First Fed. v. Asoc. de Condómines*, supra; *Pierson Muller I v. Feijoó*, 106 D.P.R. 838 (1978); *Otero Martínez v. Gobernador*, 106 D.P.R. 552 (1977).

■ En aquellos casos en que se alegue el incumplimiento de las agencias con sus deberes ministeriales, toda persona tendrá disponible el recurso de *mandamus* y el recurso de *injunction* para hacer valer las obligaciones de dichas agencias. *Mun. de Loíza v. Sucns. Suárez et al.*, 154 D.P.R. 333 (2001); *Colón y otros v. J.C.A.*, 148 D.P.R. 434 (1999). Véase, además, *Misión Ind. P.R. v. J.C.A.*, 145 D.P.R. 908 (1998). Ya que el *injunction* es un remedio dinámico sobre el cual los tribunales siempre conservan su ju-

risdicción,([12]) y a su vez el recurso apropiado para hacer valer las obligaciones de las agencias, es evidente que las personas afectadas pueden acudir ante los tribunales obviando el foro administrativo.

En el caso de autos, A.R.Pe. había concedido los permisos. La Asociación acudió ante el foro judicial para exigir que Puerto del Rey cumpliera con las condiciones impuestas, ya que la agencia permaneció inerte ante la situación y no hizo que se cumplieran sus órdenes. Las controversias y los hechos planteados ante el foro judicial no requerían la pericia de las agencias administrativas; por el contrario, eran cuestiones de estricto derecho.

La Asociación acudió al TPI mediante el recurso de *injunction* para hacer cumplir las condiciones impuestas por A.R.Pe., *inter alia*. Dicha agencia incumplió con su obligación de hacer valer las condiciones y los requerimientos por ella impuestos en sus resoluciones. Conforme lo expresado anteriormente, es evidente que la Asociación no tenía que acudir ante las agencias concernidas, ya que su recurso de *injunction* se basó en el alegado incumplimiento de las agencias con sus deberes ministeriales.

Respecto a la escritura pública, la interpretación de ésta y su conformidad con las resoluciones de las agencias concernidas no requieren conocimiento especializado de éstas. Además, resulta insólito que luego de haber transcurrido alrededor de tres (3) años de litigación, Puerto del Rey pretenda obviar el cauce judicial y recurra ante las agencias administrativas, quienes no hicieron cumplir sus propias órdenes, para que éstas determinen si la escritura pública cumplía con las condiciones impuestas y fueran aprobadas. Fue el TPI quien ordenó que se otorgara la mencionada escritura, en cumplimiento de lo requerido por las agen-

---

([12]) *Mun. de Loíza v. Sucns. Suárez et al.*, 154 D.P.R. 333 (2001); *Misión Ind. P.R. v. J.C.A.*, 145 D.P.R. 908 (1998); *Noriega v. Gobernador*, 122 D.P.R. 650, 688 (1988).

cias, teniendo el foro judicial autoridad para determinar si ésta cumplía o no con las condiciones correspondientes. Además, las agencias fueron partes demandadas dentro del procedimiento, por lo que podían plantear ante el tribunal cualquier asunto relacionado con lo adecuado o no de la escritura.

En cuanto a la aprobación de la escritura pública por parte del Departamento de Agricultura, sucesor de CODREMAR, en ningún momento ni la Junta ni A.R.Pe. requirieron dicha aprobación. Puerto del Rey debe acudir ante el Departamento de Agricultura para determinar el uso de las facilidades, pero ello no implica que dicho departamento deba dar su aprobación a la escritura. Nótese que son dos condiciones independientes una de la otra.

■ Concluimos que el foro judicial posee jurisdicción en este asunto, sin que apliquen las doctrinas de agotamiento de remedios administrativos o de jurisdicción primaria. Este asunto es uno de estricto derecho y no requiere la pericia de las agencias concernidas; se trata de una acción de *injunction* para ordenar que se cumplan cier tas condiciones impuestas por las agencias, sin que éstas tomaran acción para velar por su cumplimiento, acción presentada por la Asociación, que no era parte de los procedimientos administrativos.

## IV

La Asociación aduce que, el TCA erró al no confirmar la sentencia sumaria dictada por el TPI y al no ampliarla a los fines de declarar que las resoluciones de A.R.Pe. y condiciones allí impuestas responden a la política de interés publico de proveer a los ciudadanos libre acceso a las playas de Puerto Rico. Por su parte, Puerto del Rey alega que el TPI incidió al dictar sentencia sumaria, ya que a su entender existen controversias sobre hechos materiales.

La sentencia sumaria es el mecanismo procesal mediante el cual el juzgador tiene la discreción para disponer del pleito sin necesidad de celebrar vista evidenciaria. El principio rector al dictar sentencia sumaria es el sabio discernimiento del juzgador, a los fines de evitar que se despoje a un litigante de su día en corte, principio elemental del debido proceso de ley. *Consejo Tit. C. Parkside v. MGIC Fin. Corp.*, 128 D.P.R. 538, 548 (1991); *Roig Com. Bank v. Rosario Cirino*, 126 D.P.R. 613, 617 (1990).

Procede dictar sentencia sumaria, cuando no existe legítima controversia sobre hechos materiales. *Cuadrado Lugo v. Santiago Rodríguez*, 126 D.P.R. 272 (1990).[13] Este mecanismo procesal ha de utilizarse, cuando "el promovente ha establecido su derecho con claridad y ha quedado demostrado que la parte promovida no tiene derecho alguno bajo cualquier circunstancia discernible de las alegaciones que no hayan sido refutadas". *García Rivera et al. v. Enríquez*, 153 D.P.R. 323, 338 (2001). Véanse: *Pérez v. El Vocero de P.R.*, 149 D.P.R. 427 (1999); *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 D.P.R. 714 (1986). De existir dudas respecto a la existencia de disputa de hechos materiales, el juzgador no podrá dictar sentencia de forma sumaria. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 D.P.R. 881 (1994).

Los hechos materiales sobre los cuales no existe controversia sustancial, deben establecerse por medio de los documentos admisibles en evidencia que el promovente acompañe a su solicitud de sentencia sumaria o de aquellos *documentos que obren en el expediente del tribunal. Pérez Rosado v. El Vocero de P.R.*, supra; *Audiovisual Lang. v. Sist. Est. Natal Hnos.*, 144 D.P.R. 563 (1997); *Mercado*

---

[13] Véanse, *García Rivera et al. v. Enríquez*, 153 D.P.R. 323, 337 (2001); *Pérez v. El Vocero de P.R.*, 149 D.P.R. 427 (1999); *Pilot Life Ins. Co. v. Crespo Martínez*, 136 D.P.R. 624 (1994).

*Vega v. U.P.R.*, 128 D.P.R. 273, 281 (1991); *Nassar Rizek v. Hernández*, 123 D.P.R. 360, 378 (1989); *Corp. Presiding Bishop CJC of LDS v. Purcell*, supra. De ahí que, la parte promovida deba presentar documentos con igual valor probatorio a la presentada por la parte promovente para establecer una genuina disputa sobre los hechos materiales del caso. *PFZ Props., Inc. v. Gen Acc. Ins. Co.*, supra; *Corp. Presiding Bishop CJC of LDS v. Purcell*, supra.

Ante el TPI, las controversias quedaron delimitadas *por las partes* a si Puerto del Rey podía o no establecer algún tipo de restricción en la escritura pública que suscribiría para dedicar a uso público las facilidades en beneficio de los pescadores del área. Por ende, a los efectos de este recurso nos corresponde determinar si el TPI actuó correctamente al dictar sentencia sumaria.

■ Conforme sostuviéramos, el juzgador ante una solicitud de sentencia sumaria debe disponer de ella considerando los documentos que acompañan la solicitud o los que obren en el expediente del tribunal. El TPI basó su decisión en las resoluciones de las agencias y los planos presentados por Puerto del Rey.

Por su parte, Puerto del Rey alega la existencia de hechos materiales en controversia.[14] Sin embargo, los documentos considerados por el TPI demuestran que no existe controversia sustancial respecto a los hechos materiales relacionados con los asuntos delimitados por las partes.

Entendemos que el TPI actuó correctamente al determinar que Puerto del Rey tenía la obligación de otorgar la

---

[14] Sin embargo, los hechos alegados por Puerto del Rey no son materiales a las controversias según fueron delimitadas por las partes. En síntesis, Puerto del Rey señaló que la Asociación alegó en su solicitud de sentencia sumaria que Puerto del Rey estaba obligada a ceder su propiedad, mientras que la aquí peticionaria entiende que sólo debe dedicarlas a uso público sin transferir su titularidad, lo cual a su entender representa una controversia de hechos materiales. Conforme señaláramos anteriormente, la controversia quedó delimitada a si Puerto del Rey podía o no establecer algún tipo de restricción en la escritura pública que se suscribiría para *dedicar a uso público* las facilidades en beneficio de los pescadores del área, sin que estuviera involucrada la cuestión de titularidad.

escritura pública para dedicar a uso público y sin limitación alguna las facilidades en beneficio de los pescadores. Su determinación está claramente sostenida por las resoluciones de las agencias aquí concernidas y por los planos que Puerto del Rey sometiera ante éstas. El redactar la escritura pública conforme las determinaciones del TPI en nada interfiere con las funciones y obligaciones de las agencias concernidas. Por el contrario, permitir que dicha escritura sea suscrita bajo las limitaciones pretendidas por Puerto del Rey, soslaya la orden de A.R.Pe. en cuanto a que el Departamento de Agricultura coordine junto a Puerto del Rey el uso de las facilidades.

## V

Por las razones que anteceden, *se dictará sentencia para revocar la sentencia emitida por el Tribunal de Circuito de Apelaciones y confirmar la emitida por el Tribunal de Primera Instancia conforme a lo aquí expresado. Se devolverá el caso al Tribunal de Primera Instancia a los fines de concluir con los trámites ulteriores a esta decisión.*

*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Fuster Berlingeri concurrió con el resultado sin opinión escrita.