ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| **JOSÉ F. VALLE MORALES**<br><br>Apelante<br><br>v.<br><br>**AUTORIDAD DE ACUEDUCTOS Y ALCANTARILLADO y OTROS**<br><br>Apelado | KLAN202300991 | **APELACION** procedente del Tribunal de Primera Instancia, Sala Superior de **Mayagüez**<br><br>Civil Núm.: **MZ2023CV01675**<br><br>Sobre: Injunction (Entredicho Provisional, Injunction Preliminar y Permanente) y otros |

Panel integrado por su presidenta, la Jueza Domínguez Irizarry, el Juez Pérez Ocasio y la Jueza Boria Vizcarrondo[1].

Boria Vizcarrondo, Jueza Ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 22 de febrero de 2024.

Comparece el señor José F. Valle Morales (señor Valle Morales o el apelante) y nos solicita revocar una *Sentencia* emitida y notificada el 27 de septiembre de 2023 por el Tribunal de Primera Instancia, Sala Superior de Mayagüez (TPI).[2] En virtud de la referida determinación, el TPI desestimó la *Demanda* incoada por el apelante contra la Autoridad de Acueductos y Alcantarillados (AAA) y ORANF, también conocido como TruNorth (en conjunto, parte apelada).

Como cuestión de umbral, conforme con la Regla 7 (B)(5) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B,

---

[1] Mediante la Orden Administrativa OATA-2023-212 de 6 de diciembre de 2023, se designó a la Hon. Lersy G. Boria Vizcarrondo como integrante de este Panel Especial en sustitución de la Hon. Grace M. Grana Martínez.

[2] Apéndice de *Apelación*, Anejo 2, págs. 8-17. El 4 de octubre de 2023, el apelante solicitó reconsideración, la cual el TPI declaró No Ha Lugar el 23 de octubre de 2023, notificada y archivada en autos el 27 de octubre de 2023.

prescindiremos de la comparecencia de la parte apelada, con el propósito de lograr su más justo y eficiente despacho.

Por los fundamentos que exponemos a continuación, se revoca la *Sentencia* apelada.

Veamos los antecedentes fácticos y procesales que sostienen nuestra determinación.

-I-

El caso de marras dimanó el 25 de septiembre de 2023 cuando el señor Valle Morales incoó una *Demanda* sobre *injunction*, interdicto preliminar y permanente, daños y perjuicios contractuales y extracontractuales y violación de derechos constitucionales contra la AAA y ORANF, una corporación encargada de los cobros de la AAA.[3] Adujo ser una persona de ochenta (80) años de edad, propietario de varios inmuebles que arrienda en Mayagüez, Puerto Rico. Arguyó que los arrendatarios poseían cuentas individuales para el servicio de agua potable y energía eléctrica. No obstante, esgrimió que la parte apelada le transfirió las deudas de las cuentas de los arrendatarios a su cuenta residencial que, al 20 de septiembre de 2023, ascendían a veintinueve mil novecientos setenta y cinco dólares con ochenta y seis centavos ($29,975.86). Alegó que, a raíz de esto, AAA desconectó el servicio de agua potable en su residencia, sin un debido proceso de ley. Por otro lado, puntualizó que AAA nunca accedió a concederle vistas administrativas, aun cuando lo solicitó mediante cartas certificadas con acuse de recibo, cursadas los días 3 de julio de 2013, 13 de mayo de 2019, 2 de noviembre de 2019, 16 de diciembre de 2020, 7 de julio de 2022, 24 de julio de 2022 y 7 de agosto de 2022, sin respuesta alguna. Este aseveró que el Reglamento Número 8901 *sobre el uso de los servicios de la Autoridad de Acueducto y Alcantarillado Sanitario de Puerto Rico* del 25 de febrero de 2017 (Reglamento Núm. 8901), no

---

[3] *Íd.*, Anejo 1, págs. 1-7.

autorizaba transferir deudas de terceras personas. A la vez, precisó que se encuentra en unas condiciones deplorables y padece de unas condiciones graves como resultado de la desconexión del servicio de agua potable en su residencia hace más de nueve (9) años. Especificó que sufrió serios daños morales, físicos y emocionales al estar impedido de tener una higiene adecuada en su vivienda. Por cuanto, reclamó una cuantía no menor de doscientos mil dólares ($200,000.00). Asimismo, peticionó un interdicto preliminar para que el TPI ordene la inmediata reconexión del servicio de agua potable hasta dilucidar la controversia. Estableció que no procede agotar los remedios administrativos dado que AAA no le concedió las vistas administrativas solicitadas.

El 27 de septiembre de 2023, el TPI emitió una *Sentencia*, en la que desestimó la acción presentada por el señor Valle Morales.[4] El TPI apoyó su determinación en que el 20 de septiembre de 2023, el apelante recibió una notificación de deuda por parte de la AAA por la suma de veintinueve mil novecientos setenta y cinco dólares con ochenta y seis centavos ($29,975.86) y no evidenció que solicitó revisión administrativa dentro del término de diez (10) días, tal como dispone el Reglamento Núm. 8901. Además, el TPI determinó que de la faz del recurso surgió que el *injunction* era improcedente.

Inconforme, el 4 de octubre de 2023, el señor Valle Morales presentó una *Moción solicitando reconsideración*,[5] la cual el 23 de octubre de 2023, el TPI declaró No Ha Lugar.[6]

En desacuerdo, el 14 de noviembre de 2023, el señor Valle Morales acudió ante esta Curia mediante el presente recurso de apelación y le imputó al TPI el siguiente error:

> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA, SALA SUPERIOR DE MAYAGÜEZ, AL DESESTIMAR LA DEMANDA Y DECLARA[R] NO HA LUGAR LA

---

[4] *Íd.*, Anejo 2, págs. 8-17.
[5] *Íd.*, Anejo 3, págs. 18-22.
[6] *Íd.*, Anejo 6, págs. 56-58. Archivada y notificada en autos el 27 de octubre de 2023.

RECONSIDERA[CIÓN] SIN TOMAR EN CUENTA LA EXISTENCIA DE HECHOS QUE NO AMERITABAN AGOTAR EL PROCEDIMIENTO ADMINISTRATIVO.

En síntesis, el apelante nos peticionó revocar la desestimación de la *Demanda* y ordenar la reconexión del servicio de agua potable. Concretizó que sufre un cáncer terminal y que el remedio administrativo le provocaría un daño irreparable a su vida, por la excesiva dilación de la AAA.

En vista del error señalado, procedemos a discutir las normas jurídicas aplicables a este recurso.

-II-

-A-

La Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, permite que la parte demandada solicite la desestimación de la demanda, previo a contestarla, por los siguientes fundamentos: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) dejar de exponer una reclamación que justifique la concesión de un remedio, y (6) dejar de acumular una parte indispensable.

Al considerar una moción de desestimación al amparo de la Regla 10.2 de Procedimiento Civil, *supra*, el tribunal debe tomar como ciertos todos los hechos bien alegados en la demanda y considerarlos de la manera más favorable para la parte demandante. *Rivera Sanfeliz et al. v. Jta. Dir. First Bank*, 193 DPR 38, 49 (2015); *Colón Rivera v. ELA*, 183 DPR 1033, 1049 (2014). El tribunal debe "considerar si a la luz de la situación más favorable al demandante y resolviendo toda duda a favor de este, la demanda es suficiente para constituir una reclamación válida". *Pressure Vessels PR v. Empire Gas PR*, 137 DPR 497, 505 (1994). Pues, la demanda no debe desestimarse, excepto se demuestre que la parte demandante no tiene derecho a remedio alguno. *Aut. Tierras v. Moreno & Ruiz Dev.*

*Corp.*, 174 DPR 409, 429 (2008). Igualmente, el tribunal no debe desestimar la demanda si es susceptible de enmendarse. *Íd.* Ello es así, dado que en nuestro ordenamiento jurídico existe una clara política pública de que los casos se ventilen en sus méritos y no se le prive a una parte de su día en corte. *Banco Popular v. SLG Negrón*, 164 DPR 855, 863 (2005).

-B-

La doctrina de agotamiento de remedios administrativos versa en una autolimitación judicial sobre la determinación del momento apropiado en que un tribunal debe intervenir en una controversia presentada inicialmente ante un foro administrativo. *SLG Flores-Jiménez v. Colberg*, 173 DPR 843, 851 (2008); *Asoc. Pesc. Pta. Figueras v. Pto. Del Rey*, 155 DPR 906, 916-917 (2001). Su propósito radica en "evitar una intervención judicial innecesaria y a destiempo que tienda a interferir con el cauce y el desenlace normal del procedimiento administrativo". *Moreno Ferrer v. JRCM*, 209 DPR 430, 435 (2022). Esta doctrina aplica cuando la parte demandante instó o tiene pendiente una acción ante la consideración de un foro adjudicador, sin este culminar el trámite administrativo. *Guzmán y otros v. ELA*, 156 DPR 693, 712 (2002). Es decir, "es menester que exista aún alguna fase del procedimiento administrativo que la parte concernida deba agotar". *Íd.* De esta manera, el foro administrativo tiene oportunidad de desarrollar un historial completo del asunto, utilizar su conocimiento especializado, aplicar uniformemente sus poderes, rectificar oportunamente sus errores o reconsiderar el alcance de su determinación. *Moreno Ferrer v. JRCM, supra*, en las págs. 435-436. A saber, la revisión judicial de una determinación administrativa no está disponible hasta que la parte afectada concluya los procedimientos administrativos. *Guzmán y otros v. ELA, supra*, en la pág. 711. De hecho, el agotamiento de los remedios administrativos constituye un

requisito jurisdiccional. *Asoc. Pesc. Pta. Figueras v. Pto. Del Rey, supra,* pág. 917.

No obstante, existen circunstancias en las que se permiten preterir agotar todos los remedios administrativos. A saber, la Sección 4.3 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), 3 LPRA sec. 9673, establece que:

> El tribunal podrá relevar a un peticionario de tener que agotar alguno o todos los remedios administrativos provistos en el caso de que dicho remedio sea inadecuado, o cuando el requerir su agotamiento resultare en un daño irreparable al promovente y en el balance de intereses no se justifica agotar dichos remedios, o cuando se alegue la violación sustancial de derechos constitucionales, o cuando sea inútil agotar los remedios administrativos por la dilación excesiva en los procedimientos, o cuando sea un caso claro de falta de jurisdicción de la agencia, o cuando sea un asunto estrictamente de derecho y es innecesaria la pericia administrativa.

El Tribunal Supremo ha dispuesto que "le corresponde a la parte demandante probar con hechos específicos y bien definidos la necesidad de obviar el cauce administrativo". *Moreno Ferrer v. JRCM, supra,* pág. 437. Es impráctico que una parte demandante agote los remedios administrativos cuando existe inacción por parte de la agencia en el incumplimiento con sus requerimientos. *Asoc. Pesc. Pta. Figueras v. Pto. Del Rey,* 155 DPR 906, 916-917 (2001). En este sentido, el máximo foro judicial resolvió que el *mandamus* es el único remedio que tiene una parte afectada por la dilación excesiva de una agencia en adjudicar un asunto. *J. Exam. Tec. Med. v. Elías et al.,* 144 DPR 483, 495 (1997). Por otro lado, cuando la parte demandante pruebe un agravio de patente intensidad a su derecho por el que reclama una urgente reparación, puede utilizar el *injunction* como un remedio para eludir el cauce administrativo. *SLG Flores-Jiménez v. Colberg, supra,* pág. 852. No obstante, si en el *injunction* predominan cuestiones propias de la pericia de la agencia, se debe permitir que transcurra el trámite administrativo. H. Sánchez Martínez, *Derecho*

*procesal apelativo: práctica jurídica de Puerto Rico*, Ed. Lexis Nexis de Puerto Rico, Inc., 2001, pág. 454.

Por otro lado, cuando en la causa de acción se solicita la concesión de daños y perjuicios, resulta infructuoso requerir agotar los remedios administrativos ante una agencia que no puede otorgar indemnización. *Muñoz Barrientos v. ELA et al.*, 2023 TSPR 105, 212 DPR __ (2023). Pues, la parte afectada debe acudir directamente al tribunal mediante una acción civil extracontractual. *Íd.*; *Guzmán y otros v. ELA, supra*, en la pág. 715. En tal sentido, cuando la agencia no pueda adjudicar una acción en daños, carece de jurisdicción para atender el asunto y no se requiere su intervención. *Íd.*

-C-

El *injunction* es un recurso extraordinario discrecional, regulado por los Artículos 675 al 695 del Código de Enjuiciamiento Civil, 32 LPRA secs. 3521-3566 y por la Regla 57 de Procedimiento Civil, *supra.* *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 426 (2008); *Pérez Vda. Muñiz v. Criado*, 151 DPR 355, 372 (2000). Es un mandamiento judicial por el que se le requiere a una persona abstenerse de hacer o permitir que se haga determinada cosa que infrinja o perjudique el derecho de otra. *Aut. Tierras v. Moreno & Ruiz Dev. Corp., supra*; Art. 675 del Código de Enjuiciamiento Civil, *supra*, sec. 3521. Por otra parte, "el *injunction* es un remedio extraordinario que se caracteriza por su perentoriedad, por ser una acción dirigida a evitar un daño inminente o a reestablecer el régimen de ley conculcado por conducta opresiva, ilegal o violenta del transgresor del orden jurídico". *Aut. Tierras v. Moreno & Ruiz Dev. Corp., supra.*

La Regla 57 de Procedimiento Civil, *supra*, establece que los tribunales pueden dictar un entredicho provisional, preliminar o permanente. Por un lado, el *injunction* preliminar tiene el propósito de mantener el *status quo* hasta celebrar el litigio en sus méritos y evitar que la parte demandada produzca una situación que convierta en

académica la sentencia o se ocasionen daños mayores mientras perdure el litigio. *Aut. Tierras v. Moreno & Ruiz Dev. Corp., supra,* en la pág. 427. Al momento de evaluar la procedencia del *injunction* preliminar, se debe tomar en consideración: (1) la naturaleza de los daños que se le puede ocasionar a las partes; (2) la irreparabilidad del daño o la existencia de un remedio adecuado en ley; (3) la probabilidad de que la parte promovente prevalezca al resolverse el litigio en su fondo; (4) la probabilidad de que la causa se torne académica y (5) el impacto sobre el interés público del remedio que se solicita. *Íd.* en la pág. 428; *Pérez Vda. Muñiz v. Criado, supra.* No obstante, estos requisitos no son absolutos dado que la concesión del *injunction* descansa en la sana discreción del tribunal, al considerar los intereses y las necesidades de las partes. *Next Step Medical v. Bromedicon et al.,* 190 DPR 474, 487 (2014). En tal sentido, "debe expedirse con mesura y únicamente ante una demostración de clara e inequívoca violación de un derecho". *Íd.* Así, "la determinación del tribunal no se revocará en apelación, a menos que se demuestre que el foro abusó de su facultad". *Íd.*

Por otro lado, posterior al juicio en sus méritos y previo a ordenar un *injunction* permanente, el tribunal debe considerar: (1) si la parte demandante prevaleció en el juicio en sus méritos; (2) si la parte demandante posee algún remedio adecuado en ley; (3) el interés público envuelto y (4) el balance de equidades. *Aut. Tierras v. Moreno & Ruiz Dev. Corp., supra,* en la pág. 427.

No obstante, previo a expedir un *injunction,* sea preliminar o permanente, el tribunal debe examinar la ausencia de otro remedio adecuado en ley que evite este remedio extraordinario. *Íd.* Pues, mientras exista un remedio eficaz, completo y adecuado en ley para atender el asunto, el daño no se considera irreparable. *Aut. Tierras v. Moreno & Ruiz Dev. Corp., supra,* en las págs. 472-473. Lo que constituye un remedio adecuado en ley y un daño irreparable,

dependerá de las circunstancias del caso en particular. *Íd.*, en la pág. 427. Con respecto al daño irreparable, se define como "aquel que no puede ser satisfecho mediante la utilización de los remedios legales disponibles". *Pérez Vda. Muñiz v. Criado, supra*, en la pág. 373.

-D-

En otro extremo, el Reglamento Núm. 8901 instaura un trámite administrativo para la objeción de facturas, la revisión administrativa de multas, cargos y gastos administrativos y la concesión de vistas administrativas, de conformidad con los requerimientos de la Ley Núm. 33 de 27 de junio de 1985, según enmendada, conocida como la *Ley para establecer requisitos procesales mínimos para la suspensión de servicios públicos esenciales*, 27 LPRA sec. 262 *et seq* (Ley Núm. 33). Véase Arts. 2.25, 3.09, 7.10 y 7.12 del Reglamento Núm. 8901. En lo que nos concierne, la Asamblea Legislativa creó la Ley Núm. 33 con el objetivo de proveer a las personas usuarias de servicios público como el agua potable, "una adecuada oportunidad de objetar la corrección y procedencia de los cargos facturados y una adecuada notificación de la decisión de suspenderle el servicio por falta de pago; y para garantizar una adecuada divulgación de la totalidad del procedimiento a esos fines establecido". *Exposición de Motivos, Ley para establecer requisitos procesales mínimos para la suspensión de servicios públicos esenciales*, 27 LPRA sec. 262.

A tenor con el Artículo 2.25 del Reglamento Núm. 8901:

La Autoridad recibirá e investigará toda factura objetada dentro del término establecido por la Ley Núm. 33 y notificará el resultado de la investigación realizada. La investigación de la Autoridad dependerá de la naturaleza de los planteamientos del cliente en apoyo a su objeción y se limitará a la verificación de la información del servicio registrado del cliente, lectura, condiciones del contador y acometida.

Para determinar si una reclamación se somete dentro del plazo requerido, la fecha que prevalecerá será la fecha en la que el cliente, el usuario o su representante presente su objeción por los medios establecidos por la Autoridad. Si la reclamación se somete por correo, prevalecerá la fecha del matasello. La Autoridad rechazará cualquier

reclamación sometida fuera del plazo requerido, a menos que el reclamante pueda probar a satisfacción de la Autoridad que existe justa causa para el incumplimiento de dicho término.

A su vez, el Artículo 7.10 del aludido Reglamento dispone que:

Toda persona o su representante a quien se le imponga las multas administrativas, gastos administrativos, otros cargos y gastos asociados, podrá solicitar por escrito la revisión de la determinación del funcionario o representante de la Autoridad, ante el funcionario o representante indicado en la notificación dentro de diez (10) días calendario a partir de la fecha de envío de la notificación, ya sea personalmente, por correo o cualquier otro método autorizado por la Autoridad. Será requisito exponer los fundamentos por los cuales solicita reconsideración.

Subsiguientemente, dentro del término de veinte (20) días laborables desde la fecha de radicación de la revisión administrativa, el funcionario o representante designado notificará por escrito su determinación y apercibirá el derecho que tiene la persona afectada para solicitar una vista administrativa. Véase Art. 7.11 del Reglamento Núm. 8901. De la persona afectada resultar insatisfecha con la determinación del funcionario o representante asignado para la revisión administrativa, el Artículo 7.12 del Reglamento Núm. 8901 establece que debe realizar lo siguiente:

[P]odrá solicitar una Vista Administrativa dentro de los diez (10) días calendarios siguientes a la fecha de envío de la notificación de la determinación. Dicha solicitud se debe presentar por escrito, ya sea personalmente, por correo o por cualquier otro medio autorizado por la Autoridad en la dirección indicada en la notificación sobre determinación de revisión, según se menciona en el Artículo anterior, y a la atención de la Secretaría de Vistas Administrativas.

De continuar con su inconformidad, la persona afectada tendrá veinte (20) días, a partir de la notificación de la decisión del examinador o árbitro para recurrir en revisión al TPI. Véase Art. 3 de la Ley Núm. 33, 27 LPRA sec. 262b.

Importante es que de las aludidas disposiciones legales no surge que la Asamblea Legislativa le haya delegado a la AAA la autoridad

para atender reclamaciones en daños y perjuicios y conceder indemnización.

Esbozada la normativa jurídica atinente a este recurso, procedemos a resolver.

-III-

En el caso de epígrafe, el señor Valle Morales planteó que el TPI erró al desestimar la *Demanda* y no considerar que los hechos no ameritaban agotar el procedimiento administrativo ante la AAA por la excesiva dilación de la parte apelada en concederle una vista administrativa. Arguyó que el TPI no le otorgó oportunidad de defenderse de los actos de la agencia. A su vez, expresó que contrario a lo ocurrido, el Foro apelado estaba obligado a dar por ciertas todas las alegaciones fácticas de la *Demanda,* la cual no debía desestimarse, a menos se desprendiera con toda certeza que no tenía derecho a remedio alguno.

Tras un análisis sosegado de los autos y de las normas legales aplicables, le asiste la razón al apelante.

Es norma trillada que la doctrina de agotamiento de remedios administrativos tiene el fin de evitar la intervención judicial a destiempo en un proceso administrativo que la parte promovente debe agotar. *Moreno Ferrer v. JRCM, supra*; *Guzmán y otros v. ELA, supra.* Sin embargo, a modo de excepción, la Sección 4.3 de la LPAU, *supra,* reconoce que es innecesario agotar un remedio administrativo cuando sea inadecuado, su agotamiento resulte en un daño irreparable, en el balance de intereses no se justifique agotarlo, sea inútil agotarlo por la dilación excesiva, se alegue una violación de un derecho constitucional, sea un caso de clara falta de jurisdicción de la agencia o un asunto estrictamente de derecho. Para ello, se requiere que las razones para preterir el cauce administrativo sean demostradas mediante hechos específicos y bien definidos. *Moreno Ferrer v. JRCM, supra.*

Luego de brindarle veracidad a los hechos alegados en la *Demanda* e interpretándolos de la manera más liberal posible a favor del apelante, conforme a la norma antes esbozada, surge que, tras más de nueve (9) años del señor Valle Morales carecer del servicio de agua potable y de solicitarle a AAA que atienda su reclamo, la agencia nunca le ha concedido una revisión administrativa, conforme establece el Reglamento Núm. 8901. Es decir, en este caso el TPI debió tomar como cierta la alegación que sustenta la excepción del agotamiento de remedio administrativo.

Por otro lado, sabido es que cuando se peticiona la concesión de daños y perjuicios, resulta infructuoso requerir agotar los remedios administrativos ante una agencia que no puede adjudicarlos, por lo que la parte afectada debe acudir directamente al TPI. *Muñoz Barrientos v. ELA et al., supra.* De un sosegado análisis de la *Sentencia* apelada, atisbamos que el Foro Primario no consideró el reclamo de daños solicitado por el apelante. En este caso, de las disposiciones legales y reglamentarias concernientes, no surge que la Asamblea Legislativa le haya delegado a AAA la facultad de conceder remedios ante un reclamo de daños y perjuicios. Por ello, el TPI es el foro adecuado para atender el reclamo de daños y perjuicios del apelante.

Por todo lo anterior, se revoca la determinación del TPI. Por consiguiente, procede la restitución de la causa de acción incoada por el señor Valle Morales y la continuación de los procedimientos ante el Foro Primario.

-IV-

Por los fundamentos que anteceden, se revoca la *Sentencia* apelada.

Se devuelve el caso al TPI para que continúe con el curso de los trámites procesales que quedaron pendientes.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones