*701 TEXTO COMPLETO DE LA RESOLUCIÓN
Comparece ante nos, mediante recurso de certiorari, la Asociación de Pescadores de Punta Figueras, Inc., en adelante, la Asociación, solicitando la revisión de una Resolución Enmendada en Reconsideración emitida por el Tribunal de Primera Instancia, Sala Superior de Fajardo. Mediante dicho dictamen, el tribunal a quo determinó que Marina Puerto del Rey, Inc., en adelante, Marina Puerto del Rey, no tenía que ceder la titularidad a las agencias gubernamentales pertinentes para dedicar a uso público un camino de ocho (8) metros, un muelle para uso público y un estacionamiento público.
Por las razones que se esbozan a continuación, se deniega la expedición del auto solicitado.
I
Conforme surge del recurso ante nuestra consideración y del caso Asoc. Pese. Pta. Figueras v. Pto. del Rey, 155 D.P.R. 906 (2001), [1] Marina Puerto del Rey sometió ante la consideración de la Junta de Planificación la Consulta Núm. 82-24-0769-JDP, para la ubicación de una marina en la Bahía Demajagua, ubicada en el Barrio Demajagua en Fajardo. Mediante Resolución de 19 de mayo de 1983, la Junta de Planificación aprobó la Consulta presentada por Marina Puerto del Rey. Sin embargo, su concesión fue condicionada, inter alia, a que se construyera una vía con una sección de once (11) metros, desde la Carretera Estatal Núm. 3 hasta la playa y una paralela a la Zona Marítimo-Terrestre diseñando rampas de acceso al mar en coordinación con el Departamento de Recursos Naturales y Ambientales y la Corporación para el Desarrollo y Administración de los Recursos Marítimos, Lacustres y Fluviales, en adelante, CODREMAR. Además, Marina Puerto del Rey debía proveer un estacionamiento público de veinte (20) espacios, el cual se destinaría a uso público al igual que las calles, ello mediante el otorgamiento de una escritura pública.
La Junta de Planificación requirió, además, que Marina Puerto del Rey cediera al Estado, mediante escritura pública, una franja de veinte (20.0) metros paralela a la Zona Marítimo-Terrestre. Las escrituras públicas respecto a los terrenos a ser cedidos, a las vías a construir para dar acceso a la playa y a las áreas de estacionamiento público, deberían otorgarse previo a la concesión de permisos por la Administración de Reglamentos y Permisos, en adelante, ARPE.
Dispuso la Junta de Planificación, además, que Marina Puerto del Rey debía dedicar a uso público cincuenta (50) espacios de atracadores de botes {boat-slips), para uso y disfrute de los pescadores del sector, cuya ubicación debía ser coordinada con CODREMAR.
*702 Así las cosas, el 1 de octubre de 1986, Marina Puerto del Rey solicitó autorización a ARPE para el desarrollo preliminar de la marina en la Bahía Demajagua. La agencia, mediante Resolución de 27 de marzo de 1987, concedió el permiso solicitado incorporando sustancialmente las condiciones impuestas por la Junta de Planificación. En dicha Resolución, ARPE requirió, entre otros extremos: 1) que uno de los siete muelles secundarios a construirse en la marina fuera destinado a uso público para uso y disfrute de los pescadores del sector, el cual debería incluir un total de cincuenta (50) espacios para atracar botes (boat-slips); 2) que se construyera una vía pública con una sección de once (11) metros, desde la Carretera Estatal Núm. 3 hasta la playa, en coordinación con el Departamento de Recursos Naturales y Ambientales y CODREMAR; 3) que se dedicara a aso público una franja de terreno con un ancho mínimo de veinte (20) metros, paralela y medida desde la zona narítimo-terrestre.
Conforme la Resolución de ARPE, la ubicación y uso de los cincuenta (50) espacios de atracadores de botes [boat-slips), debería ser coordinada con CODREMAR. La agencia prohibió, además, el control de acceso u obstáculos que impidiesen el libre uso y disfrute de los pescadores a dicho muelle, por lo que se debía garantizar a perpetuidad el libre acceso de los pescadores al muelle desde la Carretera Núm. 3.
Posteriormente, Marina Puerto del Rey presentó ante la consideración de ARPE un plano de desarrollo preliminar alterno. Dicho plano consistía en el rediseño parcial de las tres (3) etapas de desarrollo que comprendía si proyecto. Mediante Resolución de 30 de mayo de 1990, ARPE aprobó el referido plano, dictamen que no uodificó los usos y condiciones antes indicadas.
Así las cosas, el 15 de mayo de 1996, la Asociación instó una acción sobre injunction y daños y perjuicios contra Marina Puerto del Rey. En síntesis, la Asociación alegó que Marina Puerto del Rey había incumplido con las condiciones impuestas por ARPE. De igual manera, la Asociación alegó que Marina Puerto del Rey había aloqueado la vía de acceso a los residentes a fincas adyacentes ubicadas en la Playa Punta Figueras, ya que éste, íl acceso, era a través de la finca donde estaba localizado el proyecto.
El 23 de abril de 1999 se llevó a cabo la Conferencia con Antelación al Juicio luego de la cual el Tribunal de Primera Instancia le ordenó a las partes a que se reunieran para que evaluaran un proyecto de escritura pública conforme a las recomendaciones y condiciones dispuestas por las agencias administrativas concernientes.
Surge del expediente que tenemos ante nuestra consideración, y de la Sentencia emitida por el Tribunal Supremo que:

“Puerto del Rey otorgó el 6 de mayo de 1999 ante el Notario Público Jorge S. Carlo Marrero, la escritura lública número siete (7) titulada Dedicación a Uso Público del Muelle Número Sesenta y Cinco (65) y Facilidades Accesorias en la Marina Puerto del Rey de Fajardo, Puerto Rico. Mediante la misma, Puerto del Rey iedica a uso público uno de los muelles secundarios para uso y disfrute de los pescadores, el cual provee zincuenta (50) espacios para atracar botes. Además, dedica a uso público un área para veinte (20) espacios de zstacionamiento de automóviles de pescadores, ubicado en el sector sur-este de la marina. Se unió y se hizo cormar parte de la escritura pública, copia de los planos del proyecto aprobados por ARPE, en los cuales se orovee un acceso de ocho (8) metros de ancho que conecta la Carretera Estatal Número 3 con el estacionamiento iedicado a uso público para el uso y disfrute de los pescadores.

No obstante, la utilización de las facilidades fue condicionada al uso de pescadores bona fide que mantienen licencias de pesca comercial vigentes con el Departamento de Recursos Naturales y Ambientales; que las embarcaciones de los pescadores estén debidamente inscritas para la pesca comercial con dicho departamento; y jue sean utilizadas exclusivamente para la pesca comercial. ”

Véase, Asoc. Pese. Pta. Figueras v. Pto. del Rey, supra.
*703 Ante la inconformidad de la Asociación con la escritura pública sometida, el 27 de octubre de 1999, se celebró una vista en la que las partes acordaron someter ante la consideración del tribunal a quo sus respectivas posiciones por escrito para determinar si procedía o no que se dictara Sentencia Sumaria en el caso de autos.
Así las cosas, y luego de varios trámites procesales, el 7 de abril de 2000, el Tribunal de Primera Instancia emitió una Sentencia en la que, en lo pertinente, estableció como hechos no controvertidos los siguientes:

8. Puerto del Rey sometió ante la Junta de Planificación la Consulta Número 82-24-0769-JPU, sobre la ubicación de una marina en la Bahía Demajagua. El día 3 de febrero de 1983 y mediante Informe Número 83-24-JPU-020, la Junta de Planificación denegó dicha Consulta.

9. Puerto del Rey mediante documento con fecha del día 23 de marzo de 1993 presentó un escrito titulado Petición de Reconsideración. En el mismo solicitaba una reconsideración al acuerdo dictado por la Junta de Planificación con fecha del 3 de febrero.

10. El 19 de mayo de 1983, la Junta de Planificación emitió una Resolución (Consulta Número 82-24-0769-JPU) en la que aprobó la Consulta 82-24-0769-JPU para la ubicación de una marina y facilidades accesorias, en el Barrio Demajagua de Fajardo.

11. En dicha Resolución incluyó unos señalamientos y recomendaciones que debían tomarse en consideración al prepararse y someterse el desarrollo preliminar correspondiente a la Administración de Reglamentos y Permisos de Puerto Rico.

12. Entre los señalamientos y recomendaciones se incluía lo siguiente:

1. Los correspondientes planos de desarrollo preliminar cumplirán con todas las disposiciones de leyes, reglamentos y normas de planificación vigentes y aplicables, así como con las normas de la Administración de Reglamentos y Permisos.

2. En conformidad con las secciones 3.01 y 5.03 del Reglamento de Zonificación de la Zona Costanera y de Accesos a las Playas y Costas de Puerto Rico, se construirá una vía con una sección de once (11) metros, desde la Carretera Estatal Número 3 hasta la playa y una paralela a la zona marítimo-terrestre diseñando rampas de acceso al mar en coordinación con el Departamento de Recursos Naturales y la Corporación para el Desarrollo y Administración de Recursos Marinos, Lacustres y Fluviales (CODREMAR). Proveerá un estacionamiento público de veinte (20) espacios y se dedicará a uso público correspondiente.

Estos requerimientos garantizarán el uso y disfrute de la playa pública y en especial el de los pescadores del sector. Las vías podrán estar localizadas en los veinte (20) metros a ser dedicados a uso público. El requerimiento de 20 espacios de estacionamiento público constituye el total para este proyecto y el complejo residencial-turístico.

Se dedicarán a uso público cincuenta (50) espacios de atracadores de botes (boat slips) para uso y disfrute de los pescadores del sector. Su ubicación será coordinada con la Corporación para el Desarrollo y Administración de los Recursos Marinos, Lacustres y Fluviales (CODREMAR).

*704 Véase, págs. 16-17 del Apéndice.
En cuanto al acceso de ocho (8) metros que conecta la Carretera Estatal Núm. 3 con el muelle y el estacionamiento, de dicha Sentencia se colige que:

25. El acceso en la parte sur del proyecto e identificado en el plano como “Acceso Peatonal y Vehicular para el Público y Para los Pescadores ” es a través de una calle de 8 metros que transcurre desde la Carr. Est. PR-3 hasta el área identificada en el plano como “Estacionamiento para pescadores ”. Dicha calle da acceso además al Muelle de pescadores.

51. El acceso de ocho metros por el área sur del proyecto, nace en la Carretera Estatal Núm. 3 y conduce hacia las facilidades para uso público, según el desarrollo preliminar aprobado del proyecto.

52. Este Tribunal llevó a cabo una inspección ocular el día 14 de abril de 1998. Durante la inspección, este Tribunal pudo observar que en la calle de ocho metros identificada en el plano como “Acceso Peatonal y Vehicular para el Público y Para los Pescadores”, la cual da acceso al muelle de los pescadores y al estacionamiento, existía un portón que impedía el libre acceso a los pescadores del lugar y al público a dicha área. ”

Véase, págs. 19-29 del Apéndice.
Conforme a lo anterior, el Tribunal de Primera Instancia declaró Con Lugar la Moción de Sentencia Sumaria presentada por la Asociación. En particular, dicho foro dispuso:

Se ordena al demandado Marina Puerto del Rey, Inc. a que proceda a otorgar la escritura de dedicación a Uso Público del Muelle Número Sesenta y Cinco (65) y Facilidades Accesorias en la Marina Puerto del Rey en Fajardo y el acceso correspondiente de ocho metros, debidamente identificado en el plano, dentro del término de treinta (30) días a partir de que la Sentencia sea final y firme. De negarse a otorgar la correspondiente escritura, se ordena al Sr. Alguacil de este Tribunal a otorgar la misma.

Se someterá la escritura garantizando a perpetuidad el libre acceso del público y de los pescadores al referido muelle y al área de estacionamiento desde la Carretera Estatal Núm. 3. En la escritura se tiene que dedicar a uso público el muelle identificado como “Muelle Para Uso de Pescadores (Cincuenta (50) botes)”, el estacionamiento designado como “Estacionamiento Para Pescadores (veinte (20))” y el acceso de ocho (8) metros que conecta la Carretera Estatal número tres con estas facilidades. La escritura no puede incluir, bajo ningún concepto, condiciones o cláusulas que alguna manera creen un control de acceso u obstáculo que impida el uso y disfrute del público y de los pescadores del sector del área de muelle público. ”

Véase, págs. 39-40 del Apéndice.
Inconforme con dicho dictamen, el 15 de mayo de 2000, Marina Puerto del Rey presentó un recurso ante este Foro (KLAN-2000-00570) en el que alegó que había errado el Tribunal de Primera Instancia al dictar Sentencia *705 Sumaria en su contra. Mediante Sentencia emitida el 10 de noviembre de 2000, otro Panel de este Foro Apelativo Intermedio revocó la Sentencia emitida por el tribunal de instancia bajo el argumento de que el remedio interdictal solicitado había sido prematuro, toda vez que no se habían agotado los remedios administrativos.
De esta decisión, la Asociación de Pescadores recurrió ante el Tribunal Supremo. El 18 de diciembre de 2001, el Tribunal Supremo expidió el auto solicitado y dictó Sentencia en la que avaló lo resuelto por el Tribunal de Primera Instancia, revocando así el dictamen de este Foro Apelativo. Surge de dicha Sentencia:

Entendemos que el TPl actuó correctamente al determinar que Puerto del Rey tenía la obligación de otorgar la escritura pública para dedicar a uso público y sin limitación alguna las facilidades en beneficio de los pescadores. Su determinación está claramente sostenida por las resoluciones de las agencias aquí concernidas y por los planos que Puerto del Rey sometiera ante éstas. El redactar la escritura pública conforme las determinaciones del TPl, en nada interfiere con las funciones y obligaciones de las agencias concernidas. Por el contrario, permitir que dicha escritura sea suscrita bajo las limitaciones pretendidas por Puerto del Rey, soslaya la orden de ARPE en cuanto a que el Departamento de Agricultura coordine junto a Puerto del Rey el uso de las facilidades. ”

Véase, Asoc. Pese. Pta. Figueras v. Pto. del Rey, supra.
Así las cosas, el Tribunal Supremo devolvió el caso al Tribunal de Primera Instancia a los fines de concluir con los trámites ulteriores relacionados a la Sentencia emitida, a saber que se otorgara la escritura pública que garantizara el libre acceso al público y a los pescadores al camino de ocho (8) metros, al área de estacionamiento y al muelle sin ninguna limitación o condición.
El 10 de abril de 2002, la Asociación presentó escrito intitulado “Moción de Desacato y Sobre Otros Extremos” en el que expuso el incumplimiento de Marina Puerto del Rey con la determinación del Tribunal de Primera Instancia. El 22 de julio de 2002, dicho foro emitió una Resolución en la que señaló, entre otros extremos, que:

No se ha presentado ningún asunto nuevo ante este Tribunal que ya no se haya dilucidado en los procedimientos administrativos y/o judiciales anteriores. Por tanto, se ordena a Marina Puerto del Rey, Inc. que cumpla al pie de la letra, sin más pretextos ni dilaciones, con el otorgamiento de la escritura pública que deberá contener las condiciones impuestas para el desarrollo de su proyecto de Resolución de la Junta de Planificación de 19 de mayo de 1983 (Consulta Número 82-24-0769-JPU), en los permisos emitidos por la Administración de Reglamentos y Permisos (en adelante A.R.P.E.) y con la Sentencia del TPI-Humacao y la Opinión del Tribunal Supremo de Puerto Rico antes mencionadas.

Como ya se había indicado, regresa este mismo caso mediante Moción de Desacato presentada por la Asociación de Pescadores alegando que Puerto del Rey continúa bloqueando el acceso a pescadores y ciudadanos a dichas facilidades para uso público. Por su parte, Puerto del Rey sostiene que ha cumplido con todo lo ordenado y que no existe mandato alguno por sentencia para que en este momento estén construidas todas las facilidades que aparecen en el plano de desarrollo alterno de 30 de mayo de 1990.

Este Tribunal observó en la inspección ocular que realizó en las facilidades en cuestión el 2 de julio de 2002 
*706
lo siguiente: 1) aún no se ha construido el estacionamiento público, 2) se utiliza el área destinada para el estacionamiento público veinte (20) vehículos como taller de reparación y de almacenamiento de botes, 3) las facilidades de atracaderos para cincuenta (50) botes de pesca no están habilitadas para tal uso, y 4) los pescadores se han visto obligados a utilizar una franja de terreno colindante al Río Demajagua como camino para llegar a la Playa Punta Figueres (sic).

Ciertamente, tanto la Sentencia del TPI-Humacao como la Opinión del Tribunal Supremo de Puerto Rico no ordenan ningún tipo de construcción, sino el otorgamiento de una escritura con ciertas especificaciones. Pero dichas Sentencias y Opinión no operan en un vacío, sino a base de las resoluciones y permisos de las agencias ya mencionadas que sí ordenan la construcción de las facilidades de muelle, estacionamiento y acceso al área de muelle como pre-condición para el desarrollo de Marina Puerto del Rey. Estas son facilidades que han estado en controversia a través de todos estos años y no otras construcciones como las que hace referencia Puerto del Rey en las alegaciones ocho (8), nueve (9) y diez (10) de su escrito titulado Moción en Torno a Inspección Ocular.”

Posteriormente, dichas resoluciones y permisos fueron avalados en procesos judiciales. No hay cabida para más interpretaciones de lo ya claramente decidido. No puede haber obstrucción al libre acceso del público en general al área del muelle identificado como “Muelle para uso de Pescadores en el Plano Sometido por Marina Puerto del Rey. La forma en que se permitirá dicho acceso ya lo establecieron las agencias administrativas pertinentes y fue confirmado por los tribunales. Por tanto, este Tribunal se hace eco de la frase utilizada por nuestro Tribunal Supremo en este mismo caso cuando lo tuvo ante su consideración. Resulta insólito que Marina Puerto del Rey continúe poniendo trabas al-libre acceso, no sólo de los pescadores del sector, sino del público en general al área del muelle destinado en el plano a tales fines.

Este Tribunal reitera lo ya resuelto: Marina Puerto del Rey, Inc. tiene que cumplir al pie de la letra con el otorgamiento de la escritura pública que deberá contener las condiciones impuestas en la Resolución de la Junta de Planificación de 19 de mayo de 1983, en los permisos emitidos por A.R.P.E. y con la Sentencia del TPI-Humacao y la Opinión del Tribunal Supremo de Puerto Rico sin más pretextos ni dilaciones. Para llevar a cabo el otorgamiento de la escritura pública, Marina Puerto del Rey, Inc. deberá coordinar junto al Departamento de Agricultura del Estado libre (sic) Asociado de Puerto Rico el uso de las facilidades y el referido otorgamiento. (Véase, último párrafo de la Opinión del Tribunal Supremo en Asociación de Pescadores, et al v. Marina Puerto del Rey, Inc., et al, 2002 JTS 4.) Esto incluye cualquier requerimiento que alguna otra agencia del Estado concernida le exija de acuerdo a la ley y/o reglamentos aplicables para el desarrollo de su proyecto.

...Se le concede sesenta (60) días a Marina Puerto del Rey, Inc., contados a partir de la notificación de esta Resolución para que coordine con el Departamento de Agricultura del Estado Libre Asociado de Puerto Rico y cumpla con el otorgamiento de la escritura pública ante la agencia gubernamental correspondiente, sea el antedicho departamento u otra agencia relacionada. (Enfasis suplido.)

Véase, págs. 46-49 del Apéndice.
El Tribunal de Primera Instancia le concedió sesenta (60) días a Marina Puerto del Rey para que coordinara con el Departamento de Agricultura y cumpliera con el otorgamiento de la escritura pública ante la agencia gubernamental que fuese necesaria.
*707 Transcurridos cuarenta y cinco (45) días desde que la Resolución antes mencionada fuera dictada, Marina Puerto del Rey aún no había cumplido con el dictamen emitido.
Surge del expediente ante nuestra consideración una Resolución de 26 de enero de 2006 donde se señala que el 12 de agosto de 2005, Marina Puerto del Rey había presentado escrito intitulado “Moción Sometiendo Escritura para Dedicar a Uso Público el Muelle #65 y Facilidades Accesorias en Marina Puerto del Rey en Fajardo, Puerto Rico”. En dicho documento, Marina Puerto del Rey sostuvo que el Departamento de Agricultura no tenía que aprobar la escritura suscrita sobre dedicación a uso público; que la dedicación a uso público no incluía la cesión de las facilidades a favor del Departamento de Agricultura, ya que la cesión o transferencia de título no era requerida; que no se requería la comparecencia de dicha agencia en la escritura aceptando las facilidades debido a que Marina Puerto del Rey no estaba obligada a cederlas; y que la Resolución de la Junta de Planificación, conforme había resuelto el Tribunal de Primera Instancia en su dictamen de 20 de noviembre de 2002, no proveía para un acceso para el público en general desde la Carretera Estatal Núm. 3 hasta la Playa Punta Figueras.
Junto con el escrito, Marina Puerto del Rey acompañó la escritura pública suscrita. Le solicitó al tribunal a quo diera por cumplido el mandato del Tribunal Supremo. Dicho foro le solicitó a las partes se expresaran sobre el documento. El 27 de septiembre de 2005, el Municipio de Fajardo, la Asociación, ARPE y los departamentos de Recursos Naturales y Ambientales y de Agricultura presentaron oposición. Apuntaron que la escritura pública no cumplía con las resoluciones administrativas y judiciales emitidas. Evaluados los escritos, el Tribunal de Primera Instancia emitió su dictamen. Acotó:

“1. Que “Puerto del Rey” otorgue una escritura sobre dedicación a uso público: a) del Muelle sesenta y cinco (65), b) de las facilidades accesorias a la Marina, entiéndase el estacionamiento de veinte (20) espacios para los pescadores, y c) el acceso de ocho (8) metros. (Sentencia del Tribunal de Primera Instancia, página 27).

2. Que “Puerto del Rey ” someta la escritura garantizando a perpetuidad el libre acceso del público y de los pescadores al muelle y el área de estacionamiento desde la Carretera Estatal Número Tres (3). En la escritura tiene que dedicar a uso público: a) el muelle identificado como “Muelle para uso de Pescadores (50 botes)”; b) el estacionamiento designado como “Estacionamiento para Pescadores (20)”; y c) el acceso, de ocho (8) metros que conecta la Carretera Estatal número [sic] Tres (3) con estas facilidades. (Sentencia del Tribunal de Primera Instancia, página 28).

3. La escritura no puede incluir bajo ningún concepto, condiciones o cláusulas que de alguna manera creen un control de acceso u obstáculo que impida el uso y disfrute del público y de los pescadores del sector al área del muelle público. (Sentencia del Tribunal de Primera Instancia, página 28).

Se le ordena a la codemandada Marina Puerto del Rey, bajo apercibimiento de sanciones, que cumpla estrictamente con las Sentencias dictadas por el Tribunal de Primera Instancia y el Tribunal Supremo de Puerto Rico.
En especial, se le exige a “Puerto del Rey” que en el término de cuarenta y cinco (45) días, contados a partir de la notificación de esta Resolución, otorgue la correspondiente escritura pública dedicando a uso público y a perpetuidad:

“a) el camino de ocho (8) metros de ancho que se extiende desde la Carretera Número Tres (3) hasta el Muelle sesenta y cinco (65), libre de todo obstáculo físico temporero o permanente, de manera que permita el libre acceso y uso del Muelle sesenta y cinco (65) y sus facilidades accesorias;

*708
b) el Muelle sesenta y cinco (65) para cincuenta (50) botes; y

c) el estacionamiento de veinte (20) espacios para pescadores.

Dicha escritura o escrituras deberán cumplir con toáos los requerimientos de ley y reglamentos aplicables de manera que permitan su inscripción en el Registro de la Propiedad. Deberán comparecer como otorgantes la codemandada, Marina Puerto del Rey, y la instrumentalidad pública, agencia o agencias gubernamentales, las personas naturales o jurídicas que se requieran para otorgar una escritura pública. ” (Enfasis en el original.)
Véase, págs. 63-67 del Apéndice.
Así las cosas, el caso de autos se asignó a otro Juez y el 16 de abril de 2008, notificada el 30 de abril de 2008, el Tribunal emitió una Orden en la que señaló una inspección ocular en la Marina Puerto del Rey para el 13 de junio de 2008.
Celebrada la vista ocular, el Tribunal de Primera Instancia emitió una Resolución el 19 de abril de 2008, notificada el 26 de junio de 2008. En dicha Resolución, el tribunal a quo luego de hacer un relato del trámite del caso señaló que, transcurridos ocho (8) años desde los dictámenes judiciales, Marina Puerto del Rey aún no había otorgado la escritura pública ordenada. Relató que, en una vista celebrada el 23 de enero de 2008, las partes habían expresado sus respectivas posiciones. La Asociación entendía que la titularidad del muelle debía ser transferida al Departamento de Agricultura, mientras que la franja de la titularidad del terreno debía ser transferida al Municipio de Fajardo, quien lo arrendaría al Congreso de Pescadores. Por su parte, el Estado concurría en que la titularidad del muelle debía ser transferida al Departamento de Agricultura, quien lo aceptaría conforme fue construido y se haría responsable de los gastos de arreglo y mantenimiento. Era contención del Estado que la titularidad del acceso de ocho (8) metros debía ser transferida al Municipio de Fajardo. Cabe apuntar que el Municipio de Fajardo concurrió con la posición del Estado y de la Asociación.
Por su parte, Marina Puerto del Rey adujo que los dictámenes emitidos no requerían el traspaso de la titularidad, sino una escritura de servidumbre gravando la propiedad donde se ubicaría el estacionamiento, el acceso de ocho (8) metros y el muelle, como de uso público a perpetuidad para beneficio de los pescadores. Expresó que se haría cargo de los gastos de mantenimiento y seguridad del acceso de ocho (8) metros, estacionamiento y muelle. De otro lado, el Congreso adujo que no habían confrontado problemas con el acceso al muelle, por lo que no era necesaria la transferencia de titularidad de la propiedad.
Ante lo anterior, en la Resolución emitida en junio de 2008, el Tribunal de Primera Instancia determinó que la única controversia a delimitarse era si al otorgar la escritura pública, se requeriría que Marina Puerto del Rey traspasara la titularidad del muelle, estacionamiento y acceso de ocho (8) metros a una entidad gubernamental o privada; o si sólo se requería garantizar a perpetuidad el libre acceso del público y los pescadores mediante una escritura de servidumbre inscribible en el Registro de la Propiedad. Analizados los argumentos, señaló dicho foro que si el propósito de la escritura pública era garantizar a perpetuidad el libre acceso del público y de los pescadores al camino de ocho (8) metros, estacionamiento de veinte (20) espacios y el muelle de cincuenta (50) botes no se requería la transferencia de titularidad, toda vez que la única manera en que Marina Puerto del Rey podía garantizar el libre acceso a lo anterior, lo cual se encontraba en sus terrenos, era reteniendo titularidad y gravando su propiedad inscribiendo una servidumbre de paso. El foro de instancia atestó que no se le había puesto en condiciones de concluir que la intención de la Junta de Planificación y de ARPE, al aprobarle el proyecto era que los costos los asumiera el Gobierno.
En conclusión, el Tribunal de Primera Instancia emitió la Resolución recurrida en la que le ordenó a Marina Puerto del Rey a preparar un borrador de escritura pública, sobre la cual las partes podían expresarse, para luego ser sometida al Registro de la Propiedad para su debida inscripción. [2] Posteriormente, el 8 de julio de 2008, *709 notificada el 10 de julio de 2008, dicha Resolución fue enmendada.
El 11 de julio de 2008, el Estado presentó escrito intitulado “Moción en Solicitud de Reconsideración”. Expuso el Estado que el Tribunal de Primera Instancia, en su Sentencia establecía que las facilidades del muelle y estacionamiento para pescadores serían administradas por el Departamento de Agricultura, quien había advenido como sucesor de CODREMAR. Sobre el acceso de ocho (8) metros, el Estado apuntó que el mismo, en sus comienzos, discurría por propiedad privada, perteneciente a Marina Puerto del Rey. Sin embargo, en algún punto no precisado el terreno dejaba de convertirse en privado para convertirse en públicos por ser terrenos ganados al mar. Sobre estos terrenos se acotó que Marina Puerto del Rey no ostentaba la titularidad, por lo que no estarían incluidos en la servidumbre mencionada. No obstante, de permitirse la servidumbre sobre estos terrenos el mismo tendría el efecto de adjudicar la titularidad de terrenos de uso público a favor del Marina Puerto del Rey, acción contraria a derecho. A tales efectos, el Estado recomendó que, a fin de garantizar el carácter de perpetuidad del acceso de ocho (8) metros era mediante cesión a nombre del Municipio de Fajardo de la porción del camino que ubicaba en terrenos privados y que el Departamento de Recursos Naturales y Ambientales realizara un deslinde del acceso de ocho (8) metros en la parte del camino que ubicaba dentro de los terrenos de dominio público, para posteriormente enmendar la misma a los efectos de excluir el camino de la concesión que se le otorgara a la Marina Puerto del Rey. En conclusión, el Estado adujo que le correspondía a las agencias mantener las facilidades del muelle y estacionamiento y al Municipio de Fajardo el acceso de ocho (8) metros.
Luego de varios trámites procesales, el 17 de julio de 2008, notificada el mismo día, el Tribunal de Primera Instancia emitió una Resolución Enmendada en Reconsideración. Concluyó el Tribunal de Primera Instancia que el cumplimiento de la Sentencia emitida por dicho foro, y confirmada por el Tribunal Supremo, requería que Marina Puerto del Rey otorgara una escritura pública que garantizara el acceso libre y perpetuo del público y los pescadores al muelle, al estacionamiento y a los ocho (8) metros que conectan la Carretera Estatal Núm. 3 con estas dos (2) áreas. Sin embargo, la Sentencia no requería que Marina Puerto del Rey transfiriera la titularidad de la propiedad. Recalcó el tribunal a quo que la escritura no podía incluir ninguna cláusula o condición que creara algún tipo de control de acceso u obstaculizara el uso y disfrute de las referidas áreas. De igual manera, estableció el foro de instancia que dicha escritura pública debía especificar que Marina Puerto del Rey se hacía responsable del mantenimiento y seguridad de todas las áreas, incluyendo el muelle, el estacionamiento y los ocho (8) metros destinados para el uso del público en general y los pescadores.
Inconforme con dicha determinación, la Asociación acude ante nos. Contando con la posición de Marina Puerto del Rey, del Municipio de Fajardo y del Estado Libre Asociado de Puerto Rico, procedemos a resolver.
II
En su escrito, la Asociación plantea que erró el Tribunal de Primera Instancia al emitir una Resolución resolviendo que Marina Puerto del Rey no tenía que ceder la titularidad a las agencias gubernamentales pertinentes para dedicar a uso público el camino de ocho (8) metros, el muelle para uso público y el estacionamiento público, cuando ya ese mismo foro había resuelto lo contrario mediante resoluciones finales y firmes en violación a la doctrina de la ley del caso y el concepto de dedicación para uso público.
III
La doctrina de la “Ley del Caso” es una manifestación necesaria y conveniente del principio reconocido de que las adjudicaciones deben tener fin. Srio. del Trabajo v. Tribunal Superior, 95 D.P.R. 136 (1967). Es reconocida generalmente la norma de que las determinaciones de un tribunal apelativo constituyen la “Ley del Caso” en todas aquellas cuestiones consideradas y decididas, pues generalmente obligan tanto al tribunal de instancia como al que las dictó si el caso vuelve a su consideración. Id.
Es doctrina reiterada en nuestro sistema que los derechos y obligaciones adjudicadas en el ámbito judicial, mediante dictamen firme, constituyen la ley del caso. In re: Fernández Díaz, res. en 21 de agosto de 2007, 172 D. *710 P.R. _(2007), 2007 J.T.S. 167; Mgmt. Adm. Serv. Corp. v. E.L.A., 152 D.P.R. 599 (2000); In re: Tormos Blandino, 135 D.P.R. 573 (1994), citando a U.S.I. Properties Inc. v. Registrador, 124 D.P.R. 448 (1989). Dicho de otra manera, de ordinario, los planteamientos que han sido objeto de adjudicación por el foro de instancia y/o por este Tribunal no pueden reexaminarse. Esos derechos y responsabilidades gozan de las características de finalidad y firmeza con arreglo a la doctrina de la “Ley del Caso”. Mgmt. Adm. Serv. Corp. v. E.L.A., supra; Vélez v. Serv. Legales de P.R., Inc., 144 D.P.R. 673 (1998), citando a Sánchez Rodríguez v. López Jiménez, 118 D.P.R. 701, 704 (1987).
En Srio. del Trabajo v. Tribunal Superior, supra, el Tribunal Supremo describió la doctrina señalando:
“Es reconocida generalmente la norma de que las determinaciones de un tribunal apelativo constituyen la “ley del caso ” en todas aquellas cuestiones consideradas y decididas y generalmente obligan tanto al tribunal de instancia como al que las dictó si el caso vuelve a su consideración. Decimos generalmente, ya que se reconoce que “cuando un tribunal se convence de que la ley del caso establecida es errónea y que podría causar una grave injusticia, debe tener el poder de aplicar una norma de derecho diferente con el propósito de resolver el caso que tiene ante su consideración en una forma justa". IB Moore, Federal Practice, Secs. 404[1], 405 (2da. ed. 1965). Véase, además, Don Quixote Hotel v. Tribunal Superior, 100 D.P.R. 19, 29-30 (1971).
IV
Dentro del marco jurídico antes esbozados, procedemos a resolver la controversia de autos.
De entrada, cabe señalar que el tracto procesal del caso ante nos es uno accidentado y complejo. La controversia de autos se ha venido dilucidando por más de veinte (20) años y Marina Puerto del Rey aún no ha otorgado la escritura pública en cuestión. Con esto en mente, pasamos a discutir los asuntos que nos han sido planteados.
Es contención de la Asociación que incidió el Tribunal de Primera Instancia al concluir que Marina Puerto del Rey no tenía que ceder la titularidad a las agencias gubernamentales pertinentes para así dedicar al uso público el muelle, el estacionamiento y el camino de ocho (8) metros que conecta las áreas anteriores. Arguye la Asociación que ese foro ya había emitido unas Resoluciones previas en las que indicaban que Marina Puerto del Rey sí tenía que ceder la titularidad de estas áreas y, por tanto, la Resolución emitida viola la doctrina de la ley del caso.
Comencemos apuntando que, de ordinario, los planteamientos que han sido objeto de adjudicación por el foro de instancia no pueden reexaminarse, por ser “ley del caso”. Mgmt. Adm. Servs. Corp. v. ELA, supra. La Asociación argumenta que en la Resolución recurrida, el tribunal de instancia planteó como controversias varios asuntos que ya habían sido dilucidados en Resoluciones anteriores.
Hemos evaluado cuidadosamente el expediente y somos de opinión que no le asiste la razón a la Asociación. Veamos.
Comencemos apuntando que surge de las determinaciones de hechos de la Sentencia del Tribunal de Primera Instancia, confirmada por el Tribunal Supremo, que la franja de 20.0 metros paralela a la Zona Marítimo-Terrestre, las calles de acceso a la playa y las áreas de estacionamiento público se cederían mediante una escritura pública. (Véase, pág. 18 del Apéndice.) En cuanto a los cincuenta (50) espacios de atracadores para botes, se determinó que su ubicación y uso sería coordinada con CODREMAR (Departamento de Recursos Naturales y Ambientales), así como lo relacionado al muelle.
En primera instancia, y sobre los últimos extremos, nada surge del tracto procesal del caso que fuera la intención de las agencias transferir la titularidad de éstos al Estado. De hecho, surge de la Resolución de ARPE que fue específica en cuanto a que los terrenos para facilidades vecinales no tendrían que cederse al Departamento *711 de Recreación y Deportes. En cuanto a los cincuenta espacios para atracaderos (boat slips) y los veinte (20) espacios de estacionamiento, surge de dicho documento que su ubicación final de estas facilidades públicas dentro de los terrenos debía contar con el endoso y coordinarse con CODREMAR (Departamento de Recursos Naturales y Ambientales). Dicha coordinación no significa que la titularidad de estos espacios se cedería de forma alguna.
Es de notar que la Asociación también plantea que en las Resoluciones anteriores del Tribunal de Primera Instancia, éste le “ordenaba comparecer en la escritura a las agencias gubernamentales que fuesen necesarias para aceptar las facilidades (Véase, pág. 8 del Recurso de Certiorari). Luego de un examen minucioso sobre dichas Resoluciones, no encontramos lugar alguno donde el Tribunal especificara que las agencias gubernamentales tenían que comparecer para “aceptar las facilidades”. A tales efectos, lo que indica la Resolución de 22 de julio de 2002 es:

Para llevar a cabo el otorgamiento de la escritura pública, Marina Puerto del Rey, Inc. deberá coordinar junto al Departamento de Agricultura del Estado Libre Asociado de Puerto Rico el uso de las facilidades y el referido otorgamiento.

Se le concede sesenta (60) días a Marina Puerto del Rey, Inc., contados a partir de la notificación de esta Resolución, para que coordine con el Departamento de Agricultura del Estado Libre Asociado de Puerto Rico y cumpla con el otorgamiento de la escritura pública ante la agencia gubernamental correspondiente, sea el antedicho departamento u otra agencia relacionada. ”

Véase, pág. 49 del Apéndice.
En cuanto a la Resolución del 8 de agosto de 2005, el Tribunal lo que dispuso fue que no procedían las alegaciones que hiciera Marina Puerto del Rey a los efectos de que hacía falta una parte indispensable. (Véase, pág. 60 del Apéndice).
Por su parte, de la Resolución del 26 de enero de 2006 podemos colegir que el tribunal a lo que se refiere es a que debe otorgarse la escritura pública en cuestión siguiendo todas las leyes y reglamentos que puedan ser aplicables a este tipo de situación de manera que la misma sea una inscribible en el Registro de la Propiedad. En ningún momento, dicho foro estableció que alguna agencia, instrumentalidad o persona particular o jurídica específica debía comparecer para que pueda otorgarse la escritura, a excepción de lo señalado anteriormente. Ello no es necesario como cuestión de derecho al constituir una servidumbre de paso.
Por tanto, es forzoso concluir que las abstracciones que hace la Asociación de las Resoluciones antes mencionadas son erróneas y, consecuentemente, sus argumentos también carecen de validez.
De otra parte, la Asociación plantea que, al amparo del Reglamento de Zonificación de la Zona Costanera y de Accesos a las Playas y Costas de Puerto Rico, Reglamento de Planificación Núm. 17, de 3 de marzo de 1987, las vías públicas en cuestión deben ser transferidas a favor del Municipio de Fajardo. No le asiste la razón a la Asociación, toda vez que, aun cuando el transferir la titularidad a favor del municipio donde ubique el proyecto es una de las formas de destinar el acceso público, no es la única forma. De la Sec. 3.01 de dicho Reglamento se colige que:

*712
3.01 — Acceso Público - Será requisito mandatorio que todo proyecto que se autorice, colindante con un litoral marítimo o lacustre, provea una o más vías de acceso público que conduzcan a través del, o bordeando ton el proyecto, desde la vía pública que sirve de acceso al mismo hasta llegar a otra vía pública paralela a la osta o a la costa misma, a la playa o al cuerpo lacustre. La dedicación de estas vías al tránsito público se hará mediante escritura pública a favor del municipio donde ubique el proyecto o del Departamento de Transportación y Obras Públicas, o mediante la aprobación de un Plano de Inscripción y por escritura pública, en los casos que aplique.

Es de notar que dicha sección provee dos (2) maneras para dedicar ciertas áreas al acceso público, a saber, mediante una escritura pública que transfiera la titularidad a favor del municipio donde ubica el proyecto o mediante la aprobación de un plano de inscripción y la debida escritura pública. En el caso de autos se aprobó el plano de inscripción para el proyecto Marina Puerto del Rey y ahora se requiere que se otorgue la escritura pública a esos efectos. El trámite seguido en el caso de autos ha sido el correcto y culminará cuando Marina Puerto del Rey otorgue la escritura conforme a lo dispuesto por el Tribunal de Primera Instancia, avalado por el Tribunal Supremo.
Ahora bien, concurrimos con la Asociación cuando indica que estas Resoluciones son finales y firmes. No obstante, tal y como señaláramos anteriormente, estas Resoluciones no indicaban que Marina Puerto del Rey tenía que ceder la titularidad a las agencias gubernamentales pertinentes para dedicar a uso público el camino de ocho (8) metros, el estacionamiento y el muelle en cuestión. Ello se cumple al otorgar la escritura de servidumbre de paso. Lo cierto es que, tal y como señala el Tribunal de Primera Instancia en la Resolución recurrida, le corresponde a Marina Puerto del Rey otorgar la escritura pública con el propósito de garantizar a perpetuidad el libre acceso del público y los pescadores al muelle, el estacionamiento y el acceso de ocho metros que conecta la carretera con las facilidades sin que se impongan condiciones o cláusulas que impidan el uso y disfrute de dichas áreas. Al así proceder, Marina Puerto del Rey asume totalmente la responsabilidad de la seguridad y el mantenimiento de dichas facilidades cumpliendo con los reglamentos y las leyes aplicables.
Ante ese escenario, no cabe hablar de una transferencia de titularidad, toda vez que la única manera de garantizar a perpetuidad el libre acceso a las áreas antes descritas es precisamente reteniendo la titularidad y gravando su propiedad inscribiendo una servidumbre en el Registro de la Propiedad. Así lo determinó el Tribunal de Primera Instancia y avalamos dicha postura.
Cabe señalar que este tribunal le solicitó al Estado Libre Asociado que expresara su posición en cuanto a la controversia planteada a los efectos de lograr un análisis completo de la situación de hechos.
En su “Escrito en Cumplimiento de Orden” el Estado Libre Asociado reconoció que ante el Tribunal de Primera Instancia había argumentado que se requería la transferencia de la titularidad del muelle y del acceso de ocho (8) metros, pero que “luego de un ponderado análisis de la “Resolución Enmendada en Reconsideración ” objeto de este recurso, decidió no acudir a revisarla ante este Honorable Tribunal, por entender que la sentencia del 7 de abril de 2000 que confirmó el Tribunal Supremo en Asoc. Pese. Pta. Figueras v. Marina Puerto del Rey, 155 D.P.R. 906 (2001), no exige el traspaso de la titularidad de las facilidades que Puerto del Rey deberá dedicar a uso público. ” (Véase, Escrito en Cumplimiento de Orden a la pág. 12.)
Ciertamente, no existe duda de que la ley del caso ha sido la misma desde la primera Resolución que emitiera el Tribunal de Primera Instancia. El error señalado por la Asociación no se cometió.
V
Por los fundamentos antes expuestos, se deniega la expedición del auto solicitado.
*713 Así lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
María Elena Pérez Ortiz Secretaria del Tribunal de Apelaciones
ESCOLIOS 2009 DTA 14

1. La primera parte de la relación de hechos proviene de dicha decisión del Tribunal Supremo.

2. La Resolución en cuestión tiene fecha del 19 de abril de 2008. No obstante, de la Notificación de dicha Resolución surge que la misma fue dictada el 11 de junio de 2008. Véase, págs. 73 - 74 del Apéndice.