Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel VIII

| LUIS ARCÁNGEL APONTE QUIÑONES<br>Recurrido<br><br>v.<br><br>LUIS RICARDO APONTE GARRIDO<br>Peticionario | KLCE202400871 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Aguadilla<br><br>Caso Núm.<br>A CD2018-0024<br><br>Sobre:<br>Cobro de Dinero |
|---|---|---|

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Adames Soto, Juez Ponente

## **RESOLUCIÓN**

En San Juan, Puerto Rico, a 20 de diciembre de 2024.

Comparece ante nosotros el señor Luis Ricardo Aponte Garrido, (señor Aponte Garrido o parte peticionaria) mediante recurso de *certiorari*, solicitando la revisión de una *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Aguadilla, (TPI), el 11 de julio de 2024. Mediante esta, el foro primario declaró *No Ha Lugar* la petición de reconsideración instada por la parte peticionaria, sobre una segunda orden de embargo emitida en aseguramiento de la *Sentencia* recaída en contra de este el 31 de enero de 2022.

Luego de evaluar los méritos del recurso, y las posiciones de ambas partes, resolvemos *Denegar* expedir el recurso de *certiorari* solicitado.

## I. **Resumen de tracto procesal**

Surge del expediente ante nos que el 6 de abril de 2018, los esposos[1] Luis Arcángel Aponte Quiñones, María Mercedes Garrido y la Sociedad Legal de Gananciales compuesta por ambos, instaron una acción en cobro de

---

[1] En la segunda alegación de la Demanda se afirmó que el señor Aponte Quiñones y la señora Garrido Martínez estaban *casados entre sí*. Apéndice del recurso de *certiorari*, pág. 194.

dinero contra Luis Ricardo Aponte Garrido, (hijo de estos), por incumplimiento con un pagaré personal por la cantidad de $818,000.00 de principal, $100,000.00 estipulados en caso de reclamación judicial, mas los intereses acumulados sobre dichas cantidades.

Sin embargo, pasado un tiempo, el 30 de junio de 2020, la señora Garrido Martínez notificó al TPI mediante *Moción solicitando sustitución de parte* sobre el fallecimiento del codemandante, señor Aponte Quiñones. A raíz de lo cual esta solicitó la sustitución del señor Aponte Quiñones por sus causahabientes, compuesta por el propio Luis Ricardo Aponte Garrido, además de los hermanos Miguel Arcángel Aponte Garrido, Charles Xavier Aponte Garrido y William Anthony Aponte Garrido. Los tres últimos fueron incluidos como demandados toda vez que no interesaban comparecer como demandantes. A su vez, la recurrida notificó que el causante otorgó inicialmente testamento en Puerto Rico, y posteriormente en España, así dejando sin efecto toda disposición testamentaria otorgada con anterioridad. En esa misma fecha el TPI ordenó la sustitución e inclusión como codemandados según solicitadas.

Por consiguiente, el 25 de noviembre de 2020, la parte recurrida presentó una *Segunda Demanda Enmendada[2]* en la cual unió como partes demandadas a Luis Ricardo Aponte Garrido, Miguel Arcángel Aponte Garrido, Charles Xavier Aponte Garrido y William Anthony Aponte Garrido, como codemandados. Luego, el 8 de enero de 2021, la misma parte instó una *Tercera demanda enmendada[3]*, incluyendo información particularizada sobre cada uno de los demandados, hermanos del peticionario.

Todos los demandados fueron emplazados mediante edicto y, ante la incomparecencia de estos a los procedimientos seguidos en su contra, el 18 de junio de 2021, el TPI emitió *Resolución* anotándoles la rebeldía.

---

[2] En la segunda y tercera alegación de la *Demanda Enmendada* la recurrida se refirió al señor Aponte Quiñones como su *difunto **esposo***. Apéndice del recurso de *certiorari*, pág. 159.
[3] En esta *Tercer demanda enmendada* también se alegó que el señor Aponte Quiñones era el *difunto **esposo*** de la recurrida. Apéndice del recurso de *certiorari*, pág. 154.

Posteriormente, el 12 de julio de 2021, la recurrida presentó una *Moción de sentencia sumaria[4]*. Allí, luego de enumerar una serie de hechos que juzgó medulares e incontrovertibles, para los cuales acompañó documentación[5], solicitó que se condenara al señor Luis Ricardo Aponte Garrido, y al caudal relicto de Luis Arcángel Aponte Quiñones, el pago de la cantidad adeudada.

En respuesta, el 13 de agosto de 2021, el peticionario presentó *Oposición a moción de sentencia sumaria*. En dicho escrito el peticionario se limitó a impugnar los hechos propuestos como incontrovertidos por la recurrida en su *Moción de sentencia sumaria*, aduciendo que la prueba documental presentada para tal propósito presuntamente no había sido autenticada, o era prueba de referencia inadmisible, además de incluir una declaración jurada a los fines de establecer que no había prestado consentimiento en el pagaré cuya acreencia se alegaba. A través de este escrito el peticionario no esgrimió o llevó a la consideración del foro primario ninguna alegación sobre presunta falta de legitimación de la recurrida, tampoco algún asunto referente al estado de indivisión del caudal relicto, ni la presunta confusión de derechos entre acreedor-deudor a través de su participación en el pleito.

Luego de considerar la moción dispositiva ante su consideración, junto al escrito en oposición, **el 31 de enero de 2022**, el foro primario **dictó sentencia sumaria a favor de la parte demandante**. Al así decidir, determinó que la señora Garrido Martínez era la tenedora de buena fe del pagaré cuya acreencia dio lugar a la causa de acción, concluyendo que la

---

[4] Consistentes con todas sus comparecencias ante el TPI, la recurrida inició su Exposición breve de las alegaciones de las partes, afirmando que la parte demandante estaba compuesta originalmente por ella y su difunto esposo Luis Arcang

[5] La parte peticionaria incluyó copia del *Pagaré Personal* que la recurrida acompañó en su *Moción de sentencia sumaria*, no así la *declaración jurada* que, a todas luces, también se incluyó en la referida *Moción,* a la cual se hizo referencia en varias ocasiones como medio para establecer hechos presentados como incontrovertidos. Es decir, la parte peticionaria nuevamente excluyó de su apéndice documentación pertinente al asunto ante nuestra consideración.

deuda estaba vencida, líquida y exigible, pero no había sido satisfecha.[6] En consecuencia, ordenó *al codemandado Luis Ricardo Aponte Garrido a pagar a la demandante María Mercedes Garrido Martínez y al caudal relicto de Luis Arcángel Aponte Quinones*[7] pagar las cantidades debidas, según desglosadas en el mismo dictamen.

La *Sentencia* aludida advino final y firme.

Pasados más de dos años de emitida la *Sentencia,* el 27 de marzo de 2024, el tribunal *a quo* atendió y acogió una *Moción de Embargo en Aseguramiento de Sentencia* instada por la recurrida,[8] sobre un inmueble ubicado en Aguadilla, propiedad de la parte peticionaria. En armonía, el mismo foro ordenó al Registrador de la Propiedad del Registro de Aguadilla la anotación del embargo sobre la referida propiedad.

Ante esto, el señor Luis Ricardo Aponte Garrido presentó un escrito intitulado *Urgente Solicitud de Paralización de Orden de Embargo y Reconsideración* el 16 de abril de 2024. En suma, solicitó que se dejara sin efecto la orden de embargo, aduciendo que la parte recurrida *carecía de legitimación para solicitarla,* pues, presuntamente, del certificado de defunción presentado por la parte recurrida no surgía que se encontrara casada con el señor Luis Arcángel Aponte Quiñones al momento del deceso. Además, argumentó que era indispensable que se determinase si la señora Garrido Martínez ostentaba la mayoría de la participación en los bienes del caudal hereditario, para establecer si sus actos podían vincular al resto de los miembros de la comunidad hereditaria, aun cuando estos no hubiesen consentido. Por último, sostuvo que, al ser él mismo un heredero forzoso, figuraba como deudor y acreedor de una parte de la suma de la *Sentencia,*

---

[6] La parte peticionaria presentó como anejo del presente recurso la *Réplica a Oposición a Moción de Sentencia Sumaria* presentada por la parte recurrida el 12 de octubre de 2021, sin embargo, **omitió la copia de la petición de sentencia sumaria y la contestación correspondiente**. Estas fueron incluidas posteriormente, luego de que así se lo ordenáramos a dicha parte.
[7] Apéndice del recurso de *certiorari*, pág. 106.
[8] La aludida moción no obra en el expediente ante nos.

por lo que solicitó que se ajustara tal suma, tras deducir la porción del caudal hereditario sobre la cual ostentaba derecho.

En respuesta, el 8 de mayo de 2024, el TPI emitió una *Resolución* manteniendo la *Orden* de embargo que ya había emitido, y citando a las partes para una vista a celebrarse el 12 de julio de 2024.

Acto seguido, el 17 de mayo de 2024, la parte peticionaria presentó una *Réplica a "Moción Fijando Posición" y a "Moción Urgente Sobre Consideración Adicional y Trámite", Solicitud de Reconsideración y solicitud para que se Anule Anotación de Embargo Ilegal.*[9] En esencia, reprodujo los mismos argumentos que había esgrimido en la *Urgente Solicitud de Paralización de Orden de Embargo y Reconsideración* el 16 de abril de 2024. A su vez, añadió que solicitar la ejecución de la *Sentencia* afectaría un bien mueble del caudal hereditario que todavía no había sido sujeto del proceso de partición y sobre el cual el recurrente y sus hermanos ostentaban un interés como coherederos. Ante lo cual, esbozó que solo cuando la partición estuviese completada era que un miembro de la comunidad hereditaria podía reclamar un derecho propietario exclusivo sobre los bienes que le fueran adjudicados. También, aseveró que existían al menos dos testamentos y aun estaba pendiente la validación del último, el cual fue otorgado en España.

En atención a esto, el 21 de mayo de 2024, el TPI emitió una *Resolución* dejando sin efecto la anotación de embargo, sujeta a la discusión que se tendría sobre los asuntos esgrimidos en la vista pautada para el 12 de julio de 2024.

Sin embargo, antes de la celebración de la vista pautada, el 13 de junio de 2024, la parte recurrida instó ante el TPI una *Moción Urgente Fijando Posición,* afirmando tener legitimación para solicitar la anotación de embargo, y afirmando que ya se le había garantizado el debido proceso a los

---

[9] En el tracto procesal del referido escrito la parte recurrente hace referencia a algunos incidentes procesales cuyos escritos no formaron parte del apéndice original del recurso de epígrafe.

codemandados, a través del proceso que dio lugar a la *Sentencia* de 31 de enero de 2022, que estuvo precedida por la anotación de rebeldía a Miguel Arcángel Aponte Garrido, Charles Xavier Aponte Garrido y William Anthony Aponte Garrido, tras su incomparecencia. Además, alegó haber acreditado mediante constancia del Registro Civil de Universidad y Certificación del Ministerio de Justicia[10] que la señora Garrido Martínez y el señor Aponte Quiñones estaban legalmente casados al momento del fallecimiento de este último. También incluyó copia de la escritura de protocolización del testamento del señor Aponte Quiñones otorgado en España, donde este le legó, además de lo que le correspondía por legítima, el tercio de libre disposición. Cónsono con ello, manifestó que contaba con la mayoría de la participación de, al menos, dos terceras partes en la comunidad de bienes, lo cual le facultaba a solicitar y obtener remedios en aseguramiento de sentencia. Por último, solicitó que se expidiera una *Orden de Prohibición de Enajenar* so pena de desacato y una *Segunda Orden de Embargo* sobre el bien inmueble previamente mencionado.

Vista la referida *Moción*, el 24 de junio de 2024, el TPI ordenó por segunda ocasión el embargo en aseguramiento de la *Sentencia* y la correspondiente anotación en el Registro de la Propiedad.

En desacuerdo, la parte recurrente presentó una *Solicitud de Reconsideración*. En esta cuestionó la segunda *Orden de embargo* emitida, aduciendo que aun continuaban en controversia varios hechos relevantes que convertían en prematura alguna orden del Tribunal, que estuviera dirigida a continuar los trámites procesales con miras a ejecutar la *Sentencia*. Planteó que la anotación de embargo en aseguramiento de la *Sentencia* excedía su obligación de pago, por lo que procedía dejarla sin efecto.

---

[10] Ambas copias de los documentos referidos provienen de España. Apéndice del recurso de *certiorari*, págs. 30-31.

Finalmente, el 11 de julio de 2024, el foro *a quo* declaró *No Ha Lugar* la referida petición de reconsideración.

Es así como, el 12 de agosto de 2024, el señor Aponte Garrido acudió ante nosotros mediante la presentación de un recurso de *certiorari*, esgrimiendo los siguientes errores:

1. ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL EMITIR UNA DETERMINACIÓN CONTRARIA A DERECHO Y EN CLARA CONTRAVENCIÓN CON LOS REMEDIOS CONCEDIDOS EN VIRTUD DE LA SENTENCIA DICTADA Y NOTIFICADA EL 31 DE ENERO DE 2022 Y 8 DE FEBRERO DE 2022, RESPECTIVAMENTE, LA CUAL ADVINO FINAL Y FIRME.

2. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL CONCEDER REMEDIOS PROVISIONALES EN ASEGURAMIENTO DE LA SENTENCIA DICTADA Y NOTIFICADA EL 31 DE ENERO DE 2022 Y 8 DE FEBRERO DE 2022, RESPECTIVAMENTE, SIN CONSIDERAR EL ESTADO DE INDIVISIÓN DEL CAUDAL HEREDITARIO DEL SR. LUIS ARCÁNGEL APONTE QUIÑONES, EL CUAL COMPRENDE EL DERECHO DE CRÉDITO QUE NACIÓ EN VIRTUD DE DICHA SENTENCIA.

3. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL CONCEDER REMEDIOS PROVISIONALES EN ASEGURAMIENTO DE LA SENTENCIA DICTADA Y NOTIFICADA EL 31 DE ENERO DE 2022 Y 8 DE FEBRERO DE 2022, RESPECTIVAMENTE, A PESAR DE QUE NO SE HA ESTABLECIDO QUE, POR SÍ SOLA, LA RECURRIDA TIENE LEGITIMACIÓN A ESTOS EFECTOS.

4. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL CONCEDER REMEDIOS PROVISIONALES EN ASEGURAMIENTO DE LA *TOTALIDAD* DE LA SENTENCIA DICTADA Y NOTIFICADA EL 31 DE ENERO DE 2022 Y 8 DE FEBRERO DE 2022, RESPECTIVAMENTE, A PESAR DE QUE EN EL PETICIONARIO SE REÚNEN LAS FIGURAS DE DEUDOR Y ACREEDOR Y, POR OPERACIÓN DE LOS ARTÍCULOS 1110 Y 1146 DEL CÓDIGO CIVIL DE 1930, *SUPRA*, QUEDA EXTINGUIDA PARCIALMENTE SU OBLIGACIÓN DE PAGO.

Por su parte, la señora Garrido Martínez presentó una *Oposición a la Expedición del Auto de Certiorari*.

Entonces, habiendo determinado este Foro intermedio que la parte peticionaria había omitido una cantidad importante de documentación relacionada a las controversias alzadas, el 4 de diciembre de 2024, emitimos una *Orden de Mostrar Causa*, bajo apercibimiento de desestimación, concediéndole un término perentorio de cinco (5) días, para que completara el *Apéndice*, conforme a la Regla 34(E) del Reglamento del Tribunal de

Apelaciones, 4 LPRA Ap. XXII-B. En específico, ordenamos que nos presentara, como mínimo, los siguientes documentos:

1. Petición de sentencia sumaria
2. Contestación a sentencia sumaria
3. Contestación a la demanda
4. Contestación a la demanda enmendada
5. Moción fijando posición
6. Moción urgente sobre consideración adicional y trámite.
7. Moción de embargo en aseguramiento de sentencia.
8. Anotación de rebeldía de partes codemandadas

Ante ello, el 12 de diciembre de 2024, el señor Aponte Garrido presentó una *Moción Informativa y en Cumplimiento de Orden,* incluyendo una serie de documentos.

Con el beneficio de la comparecencia de las partes, estamos en posición de resolver.

**II. Exposición de Derecho**

a.

El auto de *certiorari* permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. *800 Ponce de León Corp. v. American International Insurance,* 205 DPR 163, 174 (2020); *Municipio Autónomo de Caguas v. JRO Construction,* 201 DPR 703, 710 (2019); *Medina Nazario v. McNeil Healthcare LLC,* 194 DPR 723, 728 (2016). Es, en esencia, un recurso extraordinario mediante el cual se solicita al tribunal de superior jerarquía la corrección de un error cometido por el tribunal inferior. *García v. Padró,* 165 DPR 324, 334 (2005). La expedición del auto descansa en la sana discreción del tribunal, y encuentra su característica distintiva, precisamente, en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. *Medina Nazario v. McNeil Healthcare LLC,* supra, pág. 729, citando a *IG Builders et al. v. BBVAPR,* 185 DPR 307, 338 (2012). El concepto discreción implica la facultad de elegir entre diversas opciones. *IG Builders et al. v. BBVAPR,* 185 DPR 307, 338 (2012). Claro, la discreción judicial no es irrestricta y ha sido definida como

una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. *Íd.*

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52, establece que el recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, será expedido por el Tribunal de Apelaciones cuando se recurre de: (1) una resolución u orden bajo la Regla 56 (Remedios Provisionales) y la Regla 57 (*Injunction*) de Procedimiento Civil; (2) la denegatoria de una moción de carácter dispositivo y; (3) por vía de excepción de: (a) decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales; (b) asuntos relativos a privilegios evidenciarios; (c) anotaciones de rebeldía; (d) casos de relaciones de familia; (e) casos que revistan interés público; y (f) cualquier otra situación en la que esperar a la apelación constituiría un fracaso irremediable de la justicia.

Sin embargo, las resoluciones postsentencia no están comprendidas de forma expresa bajo alguno de los incisos de la Regla 52.1, *Íd.*, por lo que los recursos de *certiorari* sobre estas deben evaluarse bajo los parámetros establecidos en la Regla 40 de nuestro Reglamento, 4 LPRA Ap. XXII-B, R. 40 (Regla 40). Sobre este particular, el Tribunal Supremo de Puerto Rico expresó lo siguiente:

> La Regla 40 [...] adquiere mayor relevancia en situaciones como la presente en que, de ordinario, no están disponibles métodos alternos para asegurar la revisión de la determinación cuestionada. **Las resoluciones atinentes a asuntos postsentencia no se encuentran comprendidas entre aquellas determinaciones de naturaleza interlocutoria categóricamente sujetas a escrutinio mediante el recurso de *certiorari*.** De otra parte, por emitirse este tipo de decisión luego de dictada la sentencia, usualmente tampoco cualifica para el recurso de apelación provisto para dictámenes judiciales finales. Se corre el riesgo, por lo tanto, de que fallos erróneos nunca se vean sujetos a examen judicial simplemente porque ocurren en una etapa tardía en el proceso, tal como lo es la ejecución de sentencia. *IG Builders et al. v. BBVAPR*, supra, pág. 339. (Énfasis provisto).

Por lo tanto, un recurso de *certiorari* que nos solicita la revisión de una resolución postsentencia debe ser sometido únicamente a nuestro examen tradicional caracterizado por la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. La Regla 40,

*supra*, esboza los siete criterios que el tribunal tomará en consideración al determinar la expedición de un auto de *certiorari*. Estos son:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. Regla 40, *supra*.

Con todo, se ha de considerar que ninguno de estos es determinante por sí solo para el ejercicio de nuestra discreción. *García v. Padró*, supra, pág. 335.

b.

Nuestro más alto Foro ha reconocido que la discreción es el más poderoso instrumento reservado a los jueces para hacer justicia. *Rodríguez v. Pérez*, 161 DPR 637, 651 (2004). No obstante, la discreción judicial no es irrestricta y ha sido definida como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. *McNeil Healthcare LLC*, supra, pág. 729, citando a *Negrón v. Srio. de Justicia*, 154 DPR 79, 91 (2001). La máxima Curia también ha enfatizado que la discreción judicial "se nutre de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia; no es función al antojo o voluntad de uno, sin tasa ni limitación alguna". *Citibank et al. v. ACBI et al.*, 200 DPR 724, 735 (2018) citando a *SLG Zapata-Rivera v. JF Montalvo*, 189 DPR 414, 435 (2013).

De otra parte, nuestro Tribunal Supremo ha expresado que un tribunal apelativo no intervendrá con las determinaciones interlocutorias discrecionales procesales de un tribunal sentenciador en ausencia de

pasión, perjuicio, parcialidad o error manifiesto. *Argüello v. Argüello,* 155 DPR 62, 78-79 (2001).

Queda diáfano así el alcance de nuestra función revisora como foro apelativo al intervenir con la discreción judicial, en tanto que no intervendremos con el ejercicio de la discreción del Tribunal de Primera Instancia, salvo en aquellos casos en los que exista un grave error que revele una actuación prejuiciada y parcializada, o en los que esté presente una equivocación en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Lluch v. España Service Sta.,* 117 DPR 729, 745 (1986).

### III.  Aplicación del derecho a los hechos

Según adelantamos en la exposición de derecho, la revisión de las resoluciones interlocutorias sobre asuntos postsentencia no están comprendidas de forma expresa bajo alguno de los incisos de la Regla 52.1, por lo que los recursos de *certiorari* sobre estas deben evaluarse bajo los parámetros establecidos en la Regla 40 de nuestro Reglamento, *supra. IG Builders v. BBVAPR*, supra, pág. 339.

Luego de haber realizado tal ejercicio, a la luz de los parámetros de la Regla 40 citada, no apreciamos que el asunto encuentre cabida en ninguno de estos. Añadimos que tampoco valoramos que se justifique nuestra intervención con la *Resolución* recurrida, pues no logramos identificar que en dicho dictamen interviniera la pasión, el prejuicio, la parcialidad o el error manifiesto que nos colocaría en posición de revertirlo. De conformidad, solo cabe *Denegar* el auto solicitado. Veamos.

Valga iniciar señalando que, previo a ser emitida la *Sentencia* del **31 de enero de 2022,** tanto el peticionario, como los demás codemandados (sus hermanos), fueron incluidos como parte en dicho pleito, debidamente emplazados, por lo que tuvieron oportunidad de levantar allí las defensas que juzgaran pertinentes al caudal relicto y el posible efecto que la deuda reclamada tendría sobre este. Si embargo, ni estos, ni el propio peticionario,

esgrimieron defensas o siquiera argumentos algunos respecto a tal asunto. Al contrario, como indicamos, en la *Oposición a moción de sentencia sumaria* instada por el peticionario ante el TPI este se limitó a cuestionar el peso que se le debía dar a la prueba documental presentada en la *Moción de sentencia sumaria* para establecer la autenticidad del *Pagaré Personal,* y asuntos estrictamente relacionados a dicho negocio jurídico. Es decir, aunque el peticionario, (o los demás codemandados), bien pudieron haber planteado en dicho proceso la alegada falta de legitimación de la recurrida, la presunta confusión del acreedor-deudor en su persona, y otros asuntos atinentes al caudal relicto, eligió esperar para argumentarlos cuando la referida *Sentencia* ya había advenido final y firme, sin causa que justificara la elección de tal momento inoportuno.

En cualquier caso, lo cierto es que, finalizado el juicio seguido en este caso, el tribunal *a quo* dictó *Sentencia* sumaria a favor de la señora Garrido Martínez, en contra del señor Aponte Garrido y del caudal relicto del señor Luis Arcángel Aponte Quiñones, **ordenando el pago a la recurrida del caudal relicto de Luis Arcángel Aponte Quiñones,** en las siguientes cantidades:

a) $811, 499.98 de principal del pagaré;

b) $100,00.00 pactados en caso de reclamación judicial;

c) los intereses acumulados al tipo legal a partir del 31 de enero de 2022.

Entonces, al revisar la *Segunda orden de embargo* emitida por el TPI con fecha del 24 de junio de 2024, que es la que nos compete, a cuya revocación el peticionario aspira a través del recurso de *certiorari*, juzgamos que el foro de instancia ordenó el embargo en aseguramiento según el remedio que dispuso en la Sentencia del 31 de enero de 2022, según citado, sin excederse de lo allí determinado.

Con todo, hemos adelantado que en el recurso que nos ocupa la parte peticionaria aduce que resultaba improcedente tal remedio, pues no se

había establecido la legitimación de la señora Garrido Martínez para solicitar la anotación de embargo, estando en controversia si los recurridos estaban legalmente casados a la fecha del fallecimiento del señor Aponte Quiñones[11]. A esto añadió de que no procedía conceder remedios provisionales por la suma total de la *Sentencia,* toda vez que la parte recurrida no era la acreedora de la totalidad del monto concedido en esta, y que el caudal hereditario del señor Aponte Quiñones se encuentra en estado de indivisión.

Sin embargo, reiteramos, al examinar la segunda Orden de embargo no observamos, de forma alguna, que esta contravenga los términos de **los remedios concedidos en la *Sentencia***, sino que se ajustó a su parte dispositiva, independientemente de los *fundamentos* que el TPI luego *añadiera* para conceder la orden de embargo**[12]**.

Por lo cual, nos resulta claro que la parte peticionaria intentó insertar en el recurso una variación sustancial de los remedios concedidos por virtud de la *Sentencia.* Si la parte peticionaria se encontraba inconforme con dicho dictamen del foro de instancia, por entender que no se habían adjudicado la totalidad de las controversias, tenía derecho a utilizar, de manera oportuna, los mecanismos para cuestionar la *Sentencia,* es decir, presentar una moción de reconsideración o apelación en término, pero no lo hizo. Dicha parte no puede pretender retomar las controversias sustantivas que

---

[11] Aunque optemos por no incursionar en la discusión a fondo de los señalamientos de error, por cuanto hemos decidido denegar expedir el recurso solicitado, lo cierto es que la recurrida aseveró durante casi la totalidad de sus comparecencias ante el TPI que estaba casada con el codemandante hasta el momento en que enviudó. De aquí que durante el tracto procesal incluyéramos varias notas al calce precisando las instancias en que la recurrida hizo tales alegaciones, **y que el peticionario nunca impugnó** antes de recaída la sentencia, sino que esgrimió tal teoría legal después de la *Sentencia* haber advenido final y firme.

[12] Es corolario básico del Derecho apelativo que la apelación o revisión se da contra la sentencia o decisión apelada, es decir, contra el resultado y no contra sus fundamentos. *Asoc. Pesc. Pta. Figueras v. Pto. Del Rey,* 155 DPR 906 (2001). De aquí que nos limitamos a expresar que el remedio concedido en la Orden de embargo se encontraba alineado al remedio concedido en la Sentencia de 31 de enero de 2022, de modo que no se debe entender que estamos conformándonos a las expresiones del TPI acerca de que *el derecho de crédito no es transferible a los posibles herederos* y otras conclusiones análogas de dicho foro.

no planteó de manera oportuna, cuando recayó la *Sentencia* que luego advino final y firme.

En definitiva, no apreciamos que acontezcan las circunstancias que justificarían nuestra intervención con la *Resolución* recurrida, y de aquí decidamos *Denegar* expedir el recurso solicitado.

## IV. **Parte Dispositiva**

Según advertido, D*enegamos* expedir el recurso de *certiorari* solicitado.

Lo pronunció y manda el Tribunal y lo certifica su Secretaria.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones